STATE of Maine

v.

Dean GREEN.

Supreme Judicial Court of Maine.

Argued Sept. 7, 1989.
Decided Sept. 20, 1989.

Mary Tousignant, Dist. Atty., Anne Jordan (orally), Asst. Dist. Atty., Alfred, for State.

Craig T. Gardner (orally), Brunelle & Gardner, Saco, for defendant.

Before McKUSICK, C.J., and ROBERTS, WATHEN, GLASSMAN, CLIFFORD, HORNBY and COLLINS, JJ.

GLASSMAN, Justice.

Dean Green appeals from a judgment for conviction of rape, contending for the first time that the trial court (York County, *Brodrick, J.*) committed error when it failed to adhere to the provisions of 5 M.R.S.A. § 48 (1989).[1] We hold that although the court erred in its noncompliance, such error does

1. 5 M.R.S.A. § 48 (1989) provides in pertinent part:
 § 48. Interpreter service for the deaf and hearing impaired
 . . . .

2. **Interpreter services required.** A qualified interpreter shall be appointed as follows.
 A. Whenever any personal or property interest of a deaf or hearing impaired person is the subject of a proceeding before any agency or court, the presiding officer of the proceed-

not rise to the level of obvious error denying the defendant a fair trial. Accordingly, we affirm the judgment.

 Green contends on appeal that the absence of a qualified interpreter,[2] or in the alternative, a knowing relinquishment of his right to one on the record violated those rights guaranteed by article I, section 6 of the Maine Constitution and the sixth amendment to the United States Constitution. He argues that he was unable to assist his counsel in his own defense or confront the witnesses against him. Because Green did not object at trial to the trial court's failure to adhere to the provisions of 5 M.R.S.A. § 48(2), we review the entire record to determine whether the asserted error, if error at all, was "so highly prejudicial and so taints the proceeding as virtually to deprive the aggrieved party of a fair trial." *State v. True*, 438 A.2d 460, 468 (Me.1981); M.R.Crim.P. 52(b). This test for "obvious error" applies even when the claimed error allegedly violated the defendant's constitutional rights. *State v. Christianson*, 404 A.2d 999, 1005 (Me. 1979).

The record in this case reveals that Green's hearing impairment was first drawn to the trial court's attention by Green's motion to continue his trial date on the ground that Benjamin Garcia, a witness for the defense, was unavailable at the time and that:

> Mr. Garcia's presence is not only necessary as a witness, but also necessary to aid the Defendant in understanding the proceedings because Defendant has a bi-lateral hearing loss. Mr. Garcia knows the Defendant very well, is an excellent lip reader and can communicate with Defendant probably better than any other individual immediately available.

Without a hearing, the trial court granted the motion.

The record further reflects that the only other inquiry regarding the appointment of an interpreter occurred on the first day of the trial. The trial court stated: "Mr. Green has a hearing problem, and the gentleman with him is going to try and interpret. It's not a real formal interpretation. It's kind of a quasi-interpretation, is that right, Mr. Guillory?" Mr. Guillory, defendant's trial counsel, answered, "That's right, Your Honor." No oath was administered to Garcia as required by M.R.Crim.P. 28 ("Interpreters shall be appropriately sworn."). *See also* M.R.Evid. 604 ("An interpreter is subject to the provisions of these rules relating to qualification as an expert and the administration of an oath or affirmation that he will make a true translation.").[3]

Green did not testify. The theory of his defense was that the alleged victim consented to the sexual intercourse. The only witness who testified on Green's behalf was Garcia, the interpreter. Pretrial discovery pursuant to M.R.Crim.P. 16 allowed Green access to any statement made by a witness who testified at the trial on behalf of the State. Green makes no claim that the testimony of any witness deviated from any prior statement of that witness. Neither the court nor Green referred to the

---

ing shall, in consultation with the deaf or hearing impaired person, appoint a qualified interpreter.

 **B.** In appointing a qualified interpreter, the presiding officer shall give first consideration to persons who are certified by the National Registry of Interpreters for the Deaf.

 **C.** The presiding officer may require proof of deafness or hearing impairment prior to appointing a qualified interpreter.

 **D.** The interpreter shall be appointed after consultation with the deaf or hearing impaired person. If the appointed qualified interpreter does not meet the needs of the deaf or hearing impaired person, the presiding officer shall, with the consent of the deaf or hearing impaired person, appoint another qualified interpreter.

**2.** 5 M.R.S.A. § 48(1)(G) (1989) defines a "qualified interpreter" as

> a person with the knowledge and understanding of the code of ethics of the National Registry of Interpreters for the Deaf who is able to recognize the comprehension level of a deaf or hearing impaired person and is able to communicate effectively in a mode of communication used by the deaf or hearing impaired person and to interpret accurately the statements of the deaf or hearing impaired person.

**3.** Green did not by his brief challenge the trial court's failure to administer an oath or affirmation to Benjamin Garcia. Our examination of the record disclosed this failure.

provisions of 5 M.R.S.A. § 48 or to the fact that an oath or affirmation had not been administered to Benjamin Garcia. Green did not at any time before or during the trial claim an inability to communicate with his counsel, request any other interpreter or advise the court that he was unable to understand or follow the trial proceedings or that Garcia was not providing an adequate translation.

■ Nor does Green now claim that he was unable to communicate with his counsel or point to any part of the proceedings in connection with the charged offense that he did not understand or was unable to follow. Moreover, Green does not contend that Garcia's translation was inadequate or untrue or that he would have proceeded differently in his own defense had the court appointed a qualified interpreter. Finally, the interpreter at the trial was one of Green's own choosing and was described as an "excellent lip reader" who could "communicate with Defendant probably better than any other individual immediately available."

We do not minimize the importance of an interpreter being appropriately sworn as a prerequisite to embarking on his appointed duties in the course of a proceeding before the court. However, in this case although the written transcript of the trial proceedings is in the possession of Green and his counsel, Green does not contend nor does the record reveal any basis for a determination that Benjamin Garcia did not make a true translation of the proceedings in the trial of this matter.

Accordingly, although we find that the trial court erred in failing to comply with the provisions of 5 M.R.S.A. § 48 and of M.R.Crim.P. 28, we hold that on the record in this case such error did not result in depriving Green of a fair trial.

The entry is:

Judgment affirmed.

All concurring.