**STATE of Maine**

v.

**Brett CHRISTIANSON.**

Supreme Judicial Court of Maine.

Aug. 21, 1979.

John Atwood, Dist. Atty., Belfast, William R. Anderson (orally), Asst. Dist. Atty., Belfast, for plaintiff.

Mary Anne Davis (orally), F. Frederick Romanow, Jr., Belfast, for defendant.

Before POMEROY, WERNICK, ARCHIBALD, GODFREY and NICHOLS, JJ.

WERNICK, Justice.

Defendant has appealed from a judgment of conviction entered in the Superior Court (Waldo County) upon the verdict of a jury finding him guilty of trafficking in a scheduled drug, phencyclidine, in violation of 17–A M.R.S.A. § 1103 (Supp.1978). He claims errors in the court's admitting in evidence the documentary certification by a chemist, Dr. James R. Young, that the chemical analysis of certain pills showed them to be composed of phencyclidine.

We deny the appeal.

The documents at issue were admitted in evidence even though neither the certifying chemist who performed the test nor anyone else familiar with the nature of the particular test performed or of such chemical tests in general was called to give testimony at the trial. Despite the evident nature of the certifications as hearsay, they were held to have been rendered admissible as evidence by 17–A M.R.S.A. § 1112(1), which provides:

"A laboratory which receives. a drug or substance from a law enforcement officer or agency for analysis under this chapter shall, if it is capable of so doing, analyze the same as requested, and shall issue a certificate stating the results of such analysis. Such certificate, when duly signed and sworn to by a person certified as qualified for this purpose by the Department of Human Services under certification standards set by that department, shall be admissible in evidence in any court of the State of Maine, and shall be prima facie evidence that the composition and quality of the drug or substance is as stated therein, unless with 10 days written notice to the prosecution, the defendant requests that a qualified witness testify as to such composition and quality."

The evidence revealed that the pills had been involved in a transaction, which took place on April 6, 1978, between defendant and Agent George Robinson of the Division of Special Investigations. One day later, Agent Robinson delivered the pills to his superior, Agent Robert Stevens. Stevens subsequently mailed them to Dr. Young, certified by the Department of Human Services as qualified to make chemical analyses of the kind involved here, who performed the tests confirming that the pills were composed of phencyclidine. Only the two agents testified at the trial. It was during Agent Stevens' testimony at trial that the certificates of Dr. Young, along with the pills and the specially marked envelopes by which the prosecution sought to prove a continuing chain of custody, were admitted in evidence as exhibits.

1.

A first issue raised on appeal, adequately saved at trial for appellate cognizance in

usual course, is whether Section 1112(1) is unconstitutional because it places an impermissible burden on defendants and also relieves the prosecution of its constitutionally mandated responsibility to prove beyond a reasonable doubt the facts constituting each essential element of the offense charged.

More specifically, defendant's contentions seem to be that (1) the statutory provision that a defendant must make a request seasonably *in advance* of trial to ensure that the prosecution calls the testing chemist as its witness at trial imposes a burden on a defendant which cannot be squared with his prerogative, constitutionally conferred and implicit in the presumption of his innocence, to refrain from assisting the State in the discharge of its burden to prove defendant's guilt; and (2) the statutory authorization for the prosecution to proceed on the basis of the testing chemist's certificate alone, should a defendant have failed, as here, to make the requisite pre-trial request, violates *Wilbur v. Mullaney*, 421 U.S. 684, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975), in that its practical effect is to relieve the prosecution of its constitutional burden by proper, and reliable, evidence to prove beyond a reasonable doubt each fact essential to defendant's guilt—the critical fact involved here being the composition of the drug in which defendant allegedly trafficked.

■ In regard to the first of these facets of defendant's attack, analogous schemes establishing reciprocal notice-of-alibi requirements have been sustained against the kind of constitutional onslaught now made by defendant. In *Williams v. Florida*, 399 U.S. 78, 90 S.Ct. 1893, 26 L.Ed.2d 446 (1970) the Supreme Court of the United States upheld the constitutionality of provisions authorizing sanctions to be imposed upon a defendant who failed to comply with a prosecution notice that he furnish in advance of the trial information regarding a claim of *alibi*, if any, he would assert. Since the kind of information required of a defendant could be testimonial in nature under the scheme sustained in *Williams v. Florida*, by comparison the stricture imposed on a defendant by Section 1112(1) is of significantly lesser degree; it is basically merely a procedural mechanism which has no potential of impinging on a defendant's constitutional privilege to refuse to incriminate himself from his own lips. In light of *Williams v. Florida*, then, we find no ground of unconstitutionality because Section 1112(1) requires a defendant to do something in advance of trial upon peril that a hearsay certificate becomes admissible in evidence.

■ Turning to the second facet of defendant's attack on Section 1112(1), that it violates *Mullaney v. Wilbur, supra*, we note at once that unlike the affirmative defense scheme struck down by that decision, Section 1112(1) imposes no burden whatever upon a defendant that *he prove* anything. A defendant is given no burden to ensure that any factual issue is generated by evidence, or to come forward with the production of evidence on any issue, or to satisfy any standard of ultimate persuasion as to any issue. It is only required that a defendant follow a notice procedure prior to trial if he wants the testing chemist to testify in person as a witness called by the prosecution. The imposition of such a pretrial procedural "burden" on a defendant transgresses neither the letter nor the spirit of the decision in *Mullaney v. Wilbur, supra*.

We address another aspect of the operation of Section 1112(1), not specifically argued to us by defendant but which we deem fairly embraced in his generalized reliance on *Mullaney v. Wilbur*.

Beyond making the certificate of the testing chemist admissible as evidence, Section 1112(1) provides that it

"shall be prima facie evidence that the composition and quality of the drug or substance is as stated therein  . . . ."

When a statute thus makes the existence of one fact (here, the chemist's certification concerning the drug's composition) "prima facie" evidence of the existence of another fact necessary to conviction (here, the actu-

al composition of the drug), danger arises that *In Re Winship*, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970) and *Mullaney v. Wilbur, supra,* can be violated if the jury is not carefully instructed. The charge must make clear to the jurors that they cannot take the existence of the first, or basic, fact to be *automatically* the proof of the second fact. Precisely to prevent such potential dilution of constitutional safeguards our Rules of Evidence have special provisions regarding the role of "presumptions" and of the "prima facie" force of evidence in criminal cases. By the express terms of Rule 303(a) M.R.Evid.

"statutory provisions that certain facts are prima facie evidence of other facts . . . ."

are brought within the protective ambit of Rule 303(b) and (c) M.R.Evid. In substance, these provisions require (1) direction of judgment of acquittal if the "basic" fact proved will not support a finding that the "presumed" fact (essential to conviction) exists beyond a reasonable doubt (Rule 303(a)), and (2) if in any event this initial hurdle is cleared, and the issue of the existence of a "presumed" fact is to go to the jury, the presiding Justice must instruct by avoiding use of the term "presumed" and making clear to the jurors that they are to "draw reasonable inferences from [basic] facts proved beyond a reasonable doubt . . . ." *See also State v. Intoxicating Liquors,* 80 Me. 57, 61–62, 12 A. 794 (1888).

■ Although these potential difficulties were not specifically brought to the attention of the presiding Justice, here, by way of objection or request for a cautionary instruction when the admissibility of the certificates was placed in issue, or by way of requested instructions for charge or objections to the charge as given, we consider them sufficiently preserved for review in usual course by defendant's assertion in support of his motion for judgment of acquittal that the statute had unconstitutionally relieved the prosecution of a portion of its burden of proof.

■ Specifically in relation to the assigning of prima facie evidentiary force to an analyzing chemist's certificate, the first facet of the problem that arises is whether ordinary experience yields a sufficiently rational connection between the testing chemist's certification, as the proven fact, and the actual composition of the pills, as the presumed fact, to support the Legislature's having thus yoked them together. The need for such rational connection is further highlighted by the requirement of Rule 303(b) M.R.Evid. that the existence of the "presumed" fact be capable of being inferred beyond a reasonable doubt from proof of the existence of the basic fact. Mindful as we must be of the presumption favoring the constitutionality of legislative enactments, and more particularly since, here, there was no undertaking to make an evidentiary record to indicate irrationality in the connection made by the Legislature, we cannot conclude *in the abstract* that the Legislature was irrational in believing that a duly filed and sworn representation by a laboratory chemist (certified to perform certain tests) that a properly performed test showed a substance to be a particular scheduled drug is reliable enough to support a fact-finding inference beyond a reasonable doubt that the substance in question is in fact that particular drug.

■ The second, and potentially more dangerous, aspect of the problem is whether the jury was adequately instructed to assure that it had a correct understanding of the "prima facie" force of evidence in a criminal case, namely, (1) that such evidence is not conclusive proof and has no effect to shift the burden of persuasion to the defendant, *see Sandstrom v. Montana,* —— U.S. ——, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979); and (2) that the "prima facie" force of evidence cannot foreclose the right of jurors, as *they* may regard the evidence, to draw only such conclusions from it as *they* are satisfied have been proved beyond a reasonable doubt. In short, as Rule 303(c) M.R.Evid. admonishes, the instructions

must have adequately explained to the jurors that they may convict the accused in reliance upon an inference of fact only

> "if they conclude that such inference is valid and if the inference convinces them of guilt beyond a reasonable doubt and not otherwise."

With these critical points in mind, we have reviewed most carefully what little was said throughout the proceedings concerning the certificates as evidence and the weight to be accorded them. The Justice's instructions to the jury did not specifically refer to the certificates as evidence or highlight them in any way. Rather, the Justice spoke of all the evidence, including exhibits, and he told the jury plainly that no particular piece of evidence was to be given any special weight. He never mentioned "presumptions" or the "prima facie" force of evidence. Moreover, the attention of counsel in their closing arguments, and of the presiding Justice in his instructions, was mostly focused on the pills themselves as evidence, because of the existence of a "chain of custody" problem as to whether the pills in evidence were shown to be the same pills that had been involved in defendant's transaction with the undercover agent. For this reason, the jury heard only bare mention of the certificates as evidence, and neither counsel nor the presiding Justice intimated to the jury that the certificates had any special weight as evidence.

Against this background as developed by the entirety of the proceedings, the portion of the Justice's instructions to the jury which has most significance for our present inquiry is the following:

> "You heard the witnesses tell how the sale was made. Was it? You have to

decide that because it has to be beyond a reasonable doubt the sale was made. . . . [Were] the pills here before you, are you satisfied that those pills are in fact the same ones alleged to have been sold to the undercover agent and *are you satisfied from all of the evidence in the exhibits that they are and were in fact, Phencyclidine. If you are satisfied beyond a reasonable doubt,* that what you have here today was contraband[,] was prohibited, *was in fact what the State says they were,* that there was a sale, there was trafficking of these pills for monetary consideration and you are satisfied of that beyond a reasonable doubt[,] it is your duty to find the defendant guilty[;] if you are not so satisfied beyond any reasonable doubt it is likewise your duty to find him not guilty." (emphasis added)

We conclude that these instructions, especially in those parts we have emphasized, adequately informed the jury of the correct principles of law relating to the certificates in evidence as exhibits, namely, that in their evaluation of them together with all the other evidence, the jurors were to determine, on the basis of what facts *they* were satisfied had been proved beyond a reasonable doubt, whether or not the pills contained phencyclidine as charged by the State.

2.

As a second point on appeal, defendant raises an issue he failed to assert at the trial level,[1] that the prosecution's reliance upon the method of proof prescribed in Section 1112(1) violated his constitutional

---

1. At trial, defense counsel first sought to exclude any evidence regarding the nature of the pills involved in the transaction by contending that its proponent, Officer Stevens, was not a qualified expert. When the certificates of analysis were sought to be excluded, the grounds asserted were "that the State has not brought the chemist which would be first-hand testimony and qualified testimony and . . . that the certificate itself is hearsay." As support for the motion for acquittal the defense argued,

in addition to its "chain of custody" challenge not advanced on appeal, as follows:

> "The defense also wishes to contest the admission of documentary evidence in the form of chemist certificates over the failure by the State to produce the expert himself as a witness at the hearing and as a witness to take the stand here and that such failure to produce was contended by the State to be under statutory authority of . . . [17–A M.R. S.A.], whereby the defense . . . [con-

right to confront the witnesses against him. U.S.Const. amend. 6; Me.Const. art. I, § 6. In this posture, our review of the issue is confined to the determination whether the error thus asserted, if error at all, was so serious in its effects upon defendant's trial that the trial was rendered unfair. See Rule 52(b) M.R.Crim.P.; *State v. Pomerleau*, Me., 363 A.2d 692 (1976).

Confined to this mode of appellate cognizance, we conclude that as it arises here, the confrontation issue involves special features which preclude effective review of it.

■ In a manifest error-serious injustice context of review defendant's claim must be taken to be that Section 1112(1) subjected him to an unfair trial in that it produced the result, relative to his constitutional right of confrontation, that his omission to request in advance of trial that the prosecution present the testing chemist as its witness at trial, deprived him of the opportunity to confront the testing chemist by cross-examination under oath. Yet, *totally apart from the operation of the statute*, if the prosecution, for whatever reason, had not produced the chemist as a witness at trial but only offered his certificate in evidence, and the defendant at trial committed the procedural default of not objecting to the admissibility of the certificate as evidence, this could validly be held to have effected a

forfeiture of defendant's right to assert on appeal a denial of his constitutional right of confrontation. *See State v. Pomerleau, supra.*

■ This being so, defendant's claim of constitutional infirmity in the impact of Section 1112(1) in all the circumstances, here, relative to defendant's right of confrontation, must be taken to be the contention that by authorizing a *pre-trial* procedural default to interfere with his constitutional right to confront prosecution witnesses at trial, Section 1112(1) goes too far. As to such a claim, however, where, as here, it is also the case that defendant has been guilty of a procedural default *at trial* as to the confrontation issue, defendant had in any event forfeited his right to assert on appeal a denial of his constitutional right to confrontation and thus, in effect, had rendered moot that same claim as arising from a *pre-trial* procedural default.[2]

■ Moreover, defendant's procedural default at trial, in failing to claim a violation of his right of confrontation by the admission in evidence of the testing chemist's certificate, engenders the difficulty that it has caused the record in this case to be barren of evidence, or any offer of proof, to serve as the basis for adequate appellate evaluation of the issue. Absent any indica-

---

tends] that such statutes set forth in 17–A is unconstitutional on the grounds that it does not—it places an unnecessary burden on the defense and that it . . . [relieves] the prosecution from its burden of proving beyond a reasonable doubt all of the allegations of the alleged crime."
None of this can fairly be said to have raised for the presiding Justice's consideration the issue of the constitutional right of confrontation now being asserted on appeal.

2. Had defendant taken proper steps at trial to preserve this question for appellate review in usual course, his task on appeal would be to convince us that the right of confrontation is somehow more curtailed by a 10-day requirement of timeliness than by the ordinary contemporaneous objection rule that obtains at trial. *Cf. Williams v. Florida*, 399 U.S. at 85, 90 S.Ct. 1893 ("accelerate the timing"). A defendant who is threatened with conviction if the

State can prove (among other elements) "the composition and quality of . . . [a] drug or substance" is put on notice by this statute, in clear and straightforward terms, that if he does not request in advance the testimony of a "qualified witness" the State may carry its burden by means of a certificate of analysis. Such failure to comply, particularly since information regarding the method by which the State proposes to prove "the composition and quality of . . . [a] drug or substance" is accessible to any defendant who avails himself of the discovery rights embodied in Rule 16(b)(2) M.R.Crim.P., is arguably neither more nor less than the typical procedural default that can cost a defendant the right to assert claims of constitutional violations. This being so, a defendant who does not file the simple request required by Section 1112(1) stands in no better position than he would had he failed to object at trial.

tion that the testing chemist was, or was not, available to be subpoenaed by defendant as a witness and that defendant had, or had not, undertaken to subpoena him, we cannot even say defendant was *in fact deprived* of the presence of the testing chemist at trial, let alone that the absence of the chemist at trial had so enormous an impact as to render defendant's trial unfair.

In addition, the record before us gives not a hint as to the nature of the testing procedure that was utilized. It would therefore be the idlest conjecture for us to undertake to assess the validity of what we may assume was a legislative determination that the testing procedures employed are sufficiently reliable to serve as the type of independent guarantee of trustworthiness which must support the admission of hearsay evidence to avoid violation of the Confrontation Clause. *See Dutton v. Evans,* 400 U.S. 74, 89, 91 S.Ct. 210, 27 L.Ed.2d 213 (1970).

Similarly, we cannot determine the extent to which defendant's confrontation rights may actually have been impinged upon, here, by the statutory procedure. We have no factual basis for evaluating whether cross-examination of the chemist at trial might have raised any reasonable doubt concerning the accuracy of the statement contained in the certificate. We cannot tell how routine the tests may be, how indistinguishable from hundreds of others the chemist may perform, how simple, how infallible, how objective. Factors such as these speak to the legitimacy of the Legislature's decision to permit criminal convictions to rest on the bare documentary assertion that a chemist has found a substance to be a scheduled drug.

Equally important is our inability to assess, here, the rationality of the determination attributable as the legislative underpinning of the statute at issue. Insofar as the statute, may, in effect, make the chemist "unavailable" if his presence is not sought earlier than 10 days prior to trial, it can be regarded as reflecting a legislative

determination that a requirement for the *automatic* presence of the testing chemist in the vast majority of cases leads to nothing more than an empty ceremony and one marked by expense, administrative difficulty, and other drains upon the time and resources of our judicial system. Nothing in the record before us gives us any concrete basis to evaluate whether such an approach by the Legislature has rational grounding in fact. Hence, we have no basis for determining whether the statute *in and of itself* had potential to violate defendant's constitutional right of confrontation, let alone that if there was such a violation in this case, its impact in light of all the circumstances was so egregious that it made defendant's trial unfair.

The entry is:

Appeal denied.

Judgment of conviction affirmed.

McKUSICK, C. J., and DELAHANTY, J., did not sit.