(No. 86953.—)

# THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v. DONALD E. McCLANAHAN, Appellant.

*Opinion filed April 20, 2000.*

MILLER, J., took no part.
FREEMAN, J., joined by McMORROW, J., dissenting.

Daniel D. Yuhas, Deputy Defender, and Jacqueline L.

Bullard, Assistant Defender, of the Office of the State Appellate Defender, of Springfield, for appellant.

James E. Ryan, Attorney General, and Patrick W. Kelley, State's Attorney, both of Springfield (Joel D. Bertocchi, Solicitor General, and William L. Browers, Mary Beth Burns and Colleen Griffin, Assistant Attorneys General, of Chicago, of counsel), for the People.

JUSTICE RATHJE delivered the opinion of the court:

At issue in this appeal is the constitutionality of section 115—15 of the Code of Criminal Procedure of 1963 (725 ILCS 5/115—15 (West 1998)). This section allows the State, in prosecutions under the Cannabis Control Act (720 ILCS 550/1 *et seq.* (West 1998)) or the Illinois Controlled Substances Act (720 ILCS 570/100 *et seq.* (West 1998)), to use lab reports in lieu of actual testimony as *prima facie* evidence of the contents of the substance at issue unless the defendant files a demand for the testimony of the witness who prepared the report. The demand must be filed within seven days of the defense's receipt of the report.

## BACKGROUND

Defendant, Donald E. McClanahan, was charged with unlawful possession of less than 15 grams of cocaine (720 ILCS 570/402(c) (West 1996)). The State filed supplemental discovery that included the state police crime lab report identifying the substance at issue as cocaine. The State also tendered the affidavit of Sandra Brown, who prepared the lab report. Eight months later, defendant filed a motion asking the State to call Sandra Brown as a witness at trial. The State objected, arguing that section 115—15 gave it the right to introduce the lab report into evidence without Brown's testimony.

Section 115—15 provides:

"(a) In any criminal prosecution for a violation of either

the Cannabis Control Act or the Illinois Controlled Substances Act, a laboratory report from the Department of State Police, Division of Forensic Services, that is signed and sworn to by the person performing an analysis and that states (1) that the substance that is the basis of the alleged violation has been weighed and analyzed, and (2) the person's findings as to the contents, weight and identity of the substance, and (3) that it contains any amount of a controlled substance or cannabis is prima facie evidence of the contents, identity and weight of the substance. Attached to the report shall be a copy of a notarized statement by the signer of the report giving the name of the signer and stating (i) that he or she is an employee of the Department of State Police, Division of Forensic Services, (ii) the name and location of the laboratory where the analysis was performed, (iii) that performing the analysis is a part of his or her regular duties, and (iv) that the signer is qualified by education, training and experience to perform the analysis. The signer shall also allege that scientifically accepted tests were performed with due caution and that the evidence was handled in accordance with established and accepted procedures while in the custody of the laboratory.

(b) The State's Attorney shall serve a copy of the report on the attorney of record for the accused, or on the accused if he or she has no attorney, before any proceeding in which the report is to be used against the accused other than at a preliminary hearing or grand jury hearing when the report may be used without having been previously served upon the accused.

(c) The report shall not be prima facie evidence of the contents, identity, and weight of the substance if the accused or his or her attorney demands the testimony of the person signing the report by serving the demand upon the State's Attorney within 7 days from the accused or his or her attorney's receipt of the report." 725 ILCS 5/115—15 (West 1998).

In his motion to compel the State to call Brown as a witness, defendant argued that the seven-day demand period was unconstitutional. The trial court denied both that motion and defendant's subsequent motion to

reconsider. At trial, a police officer testified that, during a field test, the substance at issue in this case tested positive for cocaine. The State sought to use Brown's lab report and her accompanying affidavit to establish that the substance was in fact cocaine. The lab report and affidavit were admitted into evidence over defendant's objection. The jury found defendant guilty, and the trial court sentenced him to three years' imprisonment.

On appeal, defendant argued that section 115—15 is unconstitutional because it violates the confrontation clauses of the United States and Illinois Constitutions[1] (U.S. Const., amend. VI; Ill. Const. 1970, art. I, § 8) and because it allows defendants to unknowingly waive their constitutional confrontation rights. The appellate court disagreed and affirmed defendant's conviction and sentence. 301 Ill. App. 3d 216.

We granted defendant's petition for leave to appeal. Defendant's argument in this court consists of two main points. The first focuses on the type of evidence that is admissible under the statute; the second focuses on the procedures that the statute requires a defendant to follow to secure his confrontation rights.[2]

## ANALYSIS

A statute is presumed constitutional, and the party challenging the statute bears the burden of demonstrating its invalidity. *In re K.C.*, 186 Ill. 2d 542, 550 (1999).

[1] In 1994, the confrontation clause of the Illinois Constitution was amended to conform with the language of the confrontation clause of the United States Constitution. See *People v. Dean*, 175 Ill. 2d 244, 254 (1997). Defendant does not argue that he is entitled to greater protection under the Illinois Constitution, and we will apply the same analysis to both.

[2] Defendant does not contest the sufficiency of the evidence supporting his conviction. Rather, he argues solely that he should be given a new trial because the lab report and affidavit were introduced into evidence in violation of the confrontation clause.

Whether a statute is constitutional is a question of law that we review *de novo*. *People v. Fisher*, 184 Ill. 2d 441, 448 (1998).

"The central concern of the Confrontation Clause is to ensure the reliability of the evidence against a criminal defendant by subjecting it to rigorous testing in the context of an adversary proceeding before the trier of fact." *Maryland v. Craig*, 497 U.S. 836, 845, 111 L. Ed. 2d 666, 678, 110 S. Ct. 3157, 3163 (1990). The confrontation clause permits hearsay evidence to be admitted against a defendant only where either the evidence falls within a firmly rooted hearsay exception or particularized guarantees of trustworthiness assure the reliability of the evidence. *Ohio v. Roberts*, 448 U.S. 56, 66, 65 L. Ed. 2d 597, 608, 100 S. Ct. 2531, 2539 (1980).

Reliability of the Evidence

Defendant's first argument, that the statute violates the confrontation clause, consists of three prongs: (1) the statute does not require the State to establish the unavailability of the crime lab employee before introducing the lab report; (2) the statute neither falls within a firmly rooted hearsay exception nor requires particularized guarantees of trustworthiness; and (3) the statute is not necessary to further an important public policy. We agree with defendant's second point and thus see no need to address the other two arguments.

Defendant's argument is based primarily on *Ohio v. Roberts*, 448 U.S. 56, 65 L. Ed. 2d 597, 100 S. Ct. 2531 (1980), in which the Supreme Court held that hearsay evidence must possess certain indicia of reliability. *Roberts*, 448 U.S. at 65-66, 65 L. Ed. 2d at 607-08, 100 S. Ct. at 2538-39.[3] For the third prong of his argument, defen-

---

[3]The Supreme Court later limited the unavailability requirement of *Roberts* to those situations in which the hearsay statements were made in the course of a prior judicial proceeding. *White*

dant relies on *Craig*, 497 U.S. at 850, 111 L. Ed. 2d at 682, 110 S. Ct. at 3166, in which the Supreme Court held that a defendant's right to confront the witnesses against him may be denied only where that denial is necessary to further an important public policy. The State does not address these arguments on their merits, instead choosing to argue that section 115—15 does not create a confrontation clause problem because subsection (c) of the statute allows defendants to preserve their confrontation rights.

We agree with defendant. First, the evidence admissible pursuant to section 115—15 does not fall within a firmly rooted hearsay exception. In the trial court, the State argued that section 115—15 lab reports fall within the business records exception to the hearsay rule. This is unquestionably false. An exception to the business records hearsay exception are those writings or records that have "been made by anyone during an investigation of an alleged offense or during any investigation relating to pending or anticipated litigation of any kind." 725 ILCS 5/115—5(c)(2) (West 1998); *People v. Smith*, 141 Ill. 2d 40, 72 (1990). The lab reports covered by section 115—15 are prepared during the course of criminal investigations and are requested by the State in anticipation of prosecutions.

Second, section 115—15 does not contain particularized guarantees of trustworthiness. Essentially, the preparer of the report merely has to attest that he or she is qualified to conduct the test and that he or she used due caution and acted within established procedures. Indeed, in this case, the only information as to Sandra Brown's qualifications is her own statement in the affidavit that her "education, training and experience qualify [her] to perform the analyses conducted in this manner." The statute does not require the State to provide any infor-

---

*v. Illinois*, 502 U.S. 346, 116 L. Ed. 2d 848, 112 S. Ct. 736 (1992).

mation as to how the tests are conducted, what the accepted scientific procedures are, and what qualifications and training the crime lab employees must have. In other words, after the defendant has been arrested, the entity that seeks to prosecute him sends the evidence to its own lab for testing. The evidence is then admissible on nothing more than the vague assurances of the prosecuting authority's own employee that proper testing was done and that the employee is qualified to do the testing. The State does not argue, nor do we discern, that the statute contains particularized guarantees of trustworthiness.

In sum, we agree with defendant that the lab reports admissible pursuant to section 115—15 neither contain particularized guarantees of trustworthiness nor fall within a firmly established hearsay exception. We turn next to the question of whether any confrontation clause problems are avoided by subsection 115—15(c), which allows defendants to demand the testimony of the report's preparer within seven days of a defendant's receipt of the report.

### Demand Provision

Defendant's argument with respect to the demand provision of section 115—15(c) consists of two interrelated parts. Defendant argues that section 115—15(c) impermissibly requires defendants to take an affirmative step to secure their confrontation rights or be deemed to have waived them, and that it fails to contain sufficient procedural safeguards to ensure that any such waiver is knowing and voluntary. We agree.

The State does not cite any relevant authority to contravene defendant's argument that defendants cannot be required to take an affirmative step to secure their constitutional confrontation rights. Rather, the State endorses the rationale given by the appellate court in upholding the statute on this basis. The appellate court reasoned that "an accused has a right to put on relevant

evidence favorable to him, but he can lose that right by failure to give reasonable required discovery in this regard. [Citations.] By the same logic, a defendant's right of confrontation can be limited by a requirement to take reasonable action such as that required here." 301 Ill. App. 3d at 221-22. The United States Supreme Court disagrees.

In *Taylor v. Illinois*, 484 U.S. 400, 98 L. Ed. 2d 798, 108 S. Ct. 646 (1988), a case not cited by the appellate court, the Supreme Court considered whether a trial judge's discovery sanction violated the defendant's constitutional right to obtain the testimony of favorable witnesses. In that case, the trial court sanctioned the defense by refusing to allow a defense witness to testify because the defense did not disclose that witness in a pretrial discovery request. The court held that such sanctions were not absolutely prohibited by the compulsory process clause of the sixth amendment (U.S. Const., amend. VI). As part of its discussion, the court explained the difference between compulsory process and other rights guaranteed by the sixth amendment:

> "There is a significant difference between the Compulsory Process Clause weapon and other rights that are protected by the Sixth Amendment—its availability is dependent entirely on the defendant's initiative. *Most other Sixth Amendment rights arise automatically on the initiation of the adversary process and no action by the defendant is necessary to make them active in his or her case.* While those rights shield the defendant from potential prosecutorial abuses, the right to compel the presence and present the testimony of witnesses provides the defendant with a sword that may be employed to rebut the prosecution's case. The decision whether to employ it in a particular case rests solely with the defendant. The very nature of the right requires that its effective use be preceded by deliberate planning and affirmative conduct." (Emphasis added.) *Taylor*, 484 U.S. at 410, 98 L. Ed. 2d at 811, 108 S. Ct. at 653-54.

The court elaborated on this principle in a footnote:

"As one commentator has noted:

'The defendant's rights to be informed of the charges against him, to receive a speedy and public trial, to be tried by a jury, to be assisted by counsel, *and to be confronted with adverse witnesses* are designed to restrain the prosecution by regulating the procedures by which it presents its case against the accused. They apply in every case, whether or not the defendant seeks to rebut the case against him or to present a case of his own. Compulsory process, on the other hand, comes into play at the close of the prosecution's case. It operates exclusively at the defendant's initiative and provides him with affirmative aid in presenting his defense.' " (Emphasis added.) *Taylor*, 484 U.S. at 410 n.14, 98 L. Ed. 2d at 811 n.14, 108 S. Ct. at 653 n.14, quoting P. Westen, *The Compulsory Process Clause*, 73 Mich. L. Rev. 71, 74 (1974).

Thus, contrary to the assertions of the State and the appellate court, the "same logic" that allows a defendant to lose his right to present favorable evidence if he fails to comply with discovery does not allow a state to require a defendant to take affirmative steps to invoke his constitutional right to be confronted with the witnesses against him. The right of a defendant to be confronted with the witnesses against him is guaranteed by the Constitution and arises automatically at the initiation of the adversary process. *Taylor*, 484 U.S. at 410, 98 L. Ed. 2d at 811, 108 S. Ct. at 653. Subsection (c) of section 115—15 impermissibly requires the defendant to take affirmative action to secure a right that he has already been constitutionally guaranteed or be deemed to have waived that right. We are unaware of any authority that permits the legislature to make a defendant's confrontation rights contingent upon action by the defendant, and the State has not argued that such authority exists.

As stated, if a defendant does not take the procedural step required by subsection (c), he is deemed to have waived a fundamental constitutional right. Defendant

argues that any such waiver must be knowing and voluntary, and that subsection (c) lacks sufficient procedural safeguards to ensure that any waiver of the right of confrontation is knowing and voluntary. We agree.

"Waiver of a constitutional right is valid only if it is clearly established that there was 'an intentional relinquishment or abandonment of a known right ***.' " *People v. Johnson*, 75 Ill. 2d 180, 187 (1979), quoting *Johnson v. Zerbst*, 304 U.S. 458, 464, 82 L. Ed. 1461, 1466, 58 S. Ct. 1019, 1023 (1938). Such waivers must not only be voluntary, but must be " 'knowing, intelligent acts done with sufficient awareness of the relevant circumstances and likely consequences.' " *Johnson*, 75 Ill. 2d at 187, quoting *Brady v. United States*, 397 U.S. 742, 748, 25 L. Ed. 2d 747, 756, 90 S. Ct. 1463, 1469 (1970). This principle has been specifically applied to a defendant's confrontation rights. See *Boykin v. Alabama*, 395 U.S. 238, 243, 23 L. Ed. 2d 274, 279-80, 89 S. Ct. 1709, 1712 (1969); *Barber v. Page*, 390 U.S. 719, 725, 20 L. Ed. 2d 255, 260, 88 S. Ct. 1318, 1322 (1968); *Brookhart v. Janis*, 384 U.S. 1, 3-4, 16 L. Ed. 2d 314, 317, 86 S. Ct. 1245, 1246 (1966).

If a defendant fails to take the procedural step required by section 115—15(c), he has waived his right to confront and cross-examine the preparer of the report. The statute does not guarantee that this waiver is a knowing and intelligent act done with sufficient awareness of the relevant circumstances and likely consequences. Rather, this waiver automatically occurs if a defendant does not respond within seven days of being served with a lab report. In the absence of this statute, the State would have to secure a knowing waiver of the confrontation right by acquiring a defendant's stipulation to allow the lab report into evidence without the testimony of the report's preparer. Unlike section 115—15, these stipulations properly require a defendant to

make a voluntary, knowing, and intelligent decision whether he wishes to waive his right to confront the preparer of the report.

The State argues that a defendant who fails to comply with the statutory deadline has not lost his confrontation rights because he can always subpoena the preparer of the report and cross-examine him as a hostile witness. We disagree. The United States and Illinois Constitutions guarantee a defendant the right "to be confronted with the witnesses against him." U.S. Const., amend. VI; Ill. Const. 1970, art. I, § 8. The wording of these provisions is significant. They do not say that the accused has a right *to confront the witnesses* against him; they say that the accused has a right *to be confronted with* the witnesses against him. This is a mandatory constitutional obligation of the prosecuting authority. It arises automatically at the inception of the adversary process, and no action of the defendant is necessary to activate this constitutional guarantee in his case. *Taylor*, 484 U.S. at 410, 98 L. Ed. 2d at 811, 108 S. Ct. at 653.

Accepting the State's argument—that a defendant does not lose his confrontation right if a defendant can still subpoena the witnesses against him—would necessarily mean that there would be no constitutional problem with allowing the State to introduce all of its evidence by affidavit as long as a defendant is allowed to bring the prosecution's witnesses into court himself.[4] Trial by affidavit is the primary evil that the confrontation clause was designed to prevent:

"The primary object of the constitutional provision in question was to prevent depositions or *ex parte* affidavits,

---

[4]This concern is not merely theoretical. During the pendency of this appeal, the legislature broadened the scope of section 115—15 by amending it to include blood and urine testing in prosecutions for reckless homicide and driving under the influence. See Pub. Act 91—563, eff. January 1, 2000 (amending 725 ILCS 5/115—15 (West 1998)).

such as were sometimes admitted in civil cases, being used against the prisoner in lieu of a personal examination and cross-examination of the witness in which the accused has an opportunity, not only of testing the recollection and sifting the conscience of the witness, but of compelling him to stand face to face with the jury in order that they may look at him, and judge by his demeanor upon the stand and the manner in which he gives his testimony whether he is worthy of belief." *Mattox v. United States,* 156 U.S. 237, 242-43, 39 L. Ed. 409, 411, 15 S. Ct. 337, 339 (1895).

We emphatically reject any notion that the State's constitutional obligation to confront the accused with the witnesses against him can be satisfied by allowing the accused to bring the State's witnesses into court himself and cross-examine them as part of his defense.

Having determined that defendant's constitutional confrontation rights were denied when the court refused his request to compel the State to produce the testimony of the preparer of the lab report, we must next determine whether defendant's conviction should be reversed. Confrontation errors do not automatically warrant reversal. *People v. Johnson,* 116 Ill. 2d 13, 28 (1987). However, before a constitutional error can be held to be harmless, the reviewing court must be able to declare beyond a reasonable doubt that the error did not contribute to the finding of guilt. *People v. Smith,* 38 Ill. 2d 13, 15 (1967). The burden of proof is on the State to show beyond a reasonable doubt that the constitutional error did not affect the outcome of the proceeding. *Chapman v. California,* 386 U.S. 18, 24, 17 L. Ed. 2d 705, 710, 87 S. Ct. 824, 828 (1967); *People v. Simms,* 121 Ill. 2d 259, 276 (1988).

Here, the State has confined its argument to asserting that the statute is constitutional. The State does not argue that, assuming that we find the statute unconstitutional, any error in the admission of the hearsay report was harmless. Accordingly, the State has failed to satisfy its burden of showing beyond a reasonable doubt that

the error did not contribute to the guilty verdict. We therefore reverse defendant's conviction and sentence and remand the cause for a new trial.

## CONCLUSION

Section 115—15 is unconstitutional under the confrontation clauses of the United States and Illinois Constitutions. This statute impermissibly requires a defendant to take a procedural step to secure his confrontation rights or be deemed to have waived them, and does not require that the waiver of this fundamental constitutional right be a knowing, intelligent, and voluntary act. The statute cannot withstand constitutional scrutiny, and the appellate and circuit courts erred in rejecting defendant's constitutional challenge. Because the State did not establish that the constitutional error was harmless beyond a reasonable doubt, defendant's conviction and sentence must be reversed, and the cause must be remanded for a new trial.

The judgments of the appellate and circuit courts are reversed, and the cause is remanded for further proceedings.

*Judgments reversed;*
*cause remanded.*

JUSTICE MILLER took no part in the consideration or decision of this case.

JUSTICE FREEMAN, dissenting:

In construing statutory provisions substantially similar to section 115—15 of the Code of Criminal Procedure of 1963 (725 ILCS 5/115—15 (West 1998)), numerous state and federal courts have allowed the introduction of laboratory reports in evidence without requiring the testimony of the analysts who prepared the reports. I agree with these courts that the introduction of a laboratory report through a witness other than the analyst who

prepared it does not violate a defendant's right to be confronted with the witnesses against him. The laboratory report bears adequate indicia of reliability and trustworthiness. I also note that in the present case, defendant McClanahan had the opportunity to demand the production of the analyst or to subpoena the analyst as a witness. Thus, I conclude that McClanahan's right to confront the witnesses against him was protected, and I dissent from the holding of the majority declaring section 115—15 unconstitutional.

The confrontation clause of the United States Constitution (U.S. Const., amend. VI) provides: "In all criminal prosecutions, the accused shall enjoy the right *** to be confronted with the witnesses against him ***."[5] As the Supreme Court observed in *Mattox v. United States*, 156 U.S. 237, 242-43, 39 L. Ed. 409, 411, 15 S. Ct. 337, 339 (1895), the confrontation clause envisions:

> "[A] personal examination and cross-examination of the witness in which the accused has an opportunity, not only of testing the recollection and sifting the conscience of the witness, but of compelling him to stand face to face with the jury in order that they may look at him and judge by his demeanor upon the stand and the manner in which he gives his testimony whether he is worthy of belief."

The confrontation clause is thus of paramount importance in our criminal justice system.

Notwithstanding the integral role the confrontation clause plays in the administration of justice, however, the accused's right to confront witnesses "must occasionally give way to considerations of public policy and the necessities of the case." *Mattox*, 156 U.S. at 243, 39 L. Ed. at

---

[5]The confrontation clause of the Illinois Constitution (Ill. Const. 1970, art. I, § 8) is virtually identical, providing that: "In criminal prosecutions, the accused shall have the right *** to be confronted with the witnesses against him or her." For purposes of this dissent, I will refer to the confrontation clauses of the United States and Illinois Constitutions as "the confrontation clause."

411, 15 S. Ct. at 340. A competing interest to the right of the accused under the confrontation clause is the interest of every jurisdiction, including Illinois, "in effective law enforcement, and in the development and precise formulation of the rules of evidence applicable in criminal proceedings." *Ohio v. Roberts*, 448 U.S. 56, 64, 65 L. Ed. 2d 597, 607, 100 S. Ct. 2531, 2538 (1980).

In *Roberts*, the Supreme Court examined the relationship between the confrontation clause and the rules of evidence governing the introduction of hearsay statements in criminal proceedings. Initially, the Supreme Court noted that: "If one were to read [the confrontation clause] literally, it would require, on objection, the exclusion of any statement made by a declarant not present at trial. [Citation.] But, if thus applied, the Clause would abrogate virtually every hearsay exception, a result long rejected as unintended and too extreme." *Roberts*, 448 U.S. at 63, 65 L. Ed. 2d at 605-06, 100 S. Ct. at 2537. The Court emphasized that the Confrontation Clause was not intended to exclude all hearsay. *Roberts*, 448 U.S. at 63, 65 L. Ed. 2d at 606, 100 S. Ct. at 2537. The Court then articulated the rule for admission of hearsay statements:

> "when a hearsay declarant is not present for cross-examination at trial, the Confrontation Clause normally requires a showing that he is unavailable. Even then, his statement is admissible only if it bears adequate 'indicia of reliability.' Reliability can be inferred without more in a case where the evidence falls within a firmly rooted hearsay exception. In other cases, the evidence must be excluded, at least absent a showing of particularized guarantees of trustworthiness." *Ohio*, 448 U.S. at 66, 65 L. Ed. 2d at 608, 100 S. Ct. at 2539.

A showing of unavailability is not required when the utility of trial confrontation is remote. *Ohio*, 448 U.S. at 65 n.7, 65 L. Ed. 2d at 607 n.7, 100 S. Ct. at 2538 n.7. See also *White v. Illinois*, 502 U.S. 346, 353-57, 116 L. Ed. 2d 848, 858-60, 112 S. Ct. 736, 741-43 (1992); *United*

*States v. Inadi*, 475 U.S. 387, 89 L. Ed. 2d 390, 106 S. Ct. 1121 (1986).

With these principles in mind, I turn to an examination of the statutory provision at issue. Section 115—15 provides:

"(a) In any criminal prosecution for a violation of either the Cannabis Control Act or the Illinois Controlled Substances Act, a laboratory report from the Department of State Police, Division of Forensic Services, that is signed and sworn to by the person performing an analysis and that states (1) that the substance that is the basis of the alleged violation has been weighed and analyzed, and (2) the person's findings as to the contents, weight and identity of the substance, and (3) that it contains any amount of a controlled substance or cannabis is prima facie evidence of the contents, identity and weight of the substance. Attached to the report shall be a copy of a notarized statement by the signer of the report giving the name of the signer and stating (i) that he or she is an employee of the Department of State Police, Division of Forensic Services, (ii) the name and location of the laboratory where the analysis was performed, (iii) that performing the analysis is a part of his or her regular duties, and (iv) that the signer is qualified by education, training and experience to perform the analysis. The signer shall also allege that scientifically accepted tests were performed with due caution and that the evidence was handled in accordance with established and accepted procedures while in the custody of the laboratory.

(b) The State's Attorney shall serve a copy of the report on the attorney of record for the accused, or on the accused if he or she has no attorney, before any proceeding in which the report is to be used against the accused other than at a preliminary hearing or grand jury hearing when the report may be used without having been previously served upon the accused.

(c) The report shall not be prima facie evidence of the contents, identity, and weight of the substance if the accused or his or her attorney demands the testimony of the person signing the report by serving the demand upon the

State's Attorney within 7 days from the accused or his or her attorney's receipt of the report." 725 ILCS 5/115—15 (West 1998).

Thus, section 115—15 allows the introduction of a laboratory report through a witness other than the lab analyst who prepared the report. Under *Roberts*, the laboratory report is a hearsay statement, but is admissible upon a showing of unavailability (or a demonstration that such a showing is not required), and a showing that the laboratory report bears adequate indicia of reliability.

In the present case, the State did not show that the analyst who tested the cocaine was not available to testify at trial. Was the prosecution required to show unavailability in order to introduce the laboratory report? I believe not. In *White*, 502 U.S. 346, 116 L. Ed. 2d 848, 112 S. Ct. 736, the Supreme Court determined that a showing of unavailability was not required for the admission of spontaneous declarations and statements made in the course of receiving medical care. The Court noted:

"[T]he evidentiary rationale for permitting hearsay testimony regarding spontaneous declarations and statements made in the course of receiving medical care is that such out-of-court declarations are made in contexts that provide substantial guarantees of their trustworthiness. But those same factors that contribute to the statements' reliability cannot be recaptured even by later in-court testimony. A statement that has been offered in a moment of excitement—without the opportunity to reflect on the consequences of one's exclamation—may justifiably carry more weight with a trier of fact than a similar statement offered in the relative calm of the courtroom." *White*, 502 U.S. at 355-56, 116 L. Ed. 2d at 859, 112 S. Ct. at 742-43.

Further, "adversarial testing can be expected to add little to [the statements'] reliability." *White*, 502 U.S. at 357, 116 L. Ed. 2d at 860, 112 S. Ct. at 743. The Court concluded there was no basis for excluding these statements "under the aegis of the Confrontation Clause." *White*, 502 U.S. at 357, 116 L. Ed. 2d at 860, 112 S. Ct. at 743.

Likewise in *Inadi*, the Supreme Court determined that a showing of unavailability was not required for the admission of a co-conspirator's statements. The Supreme Court observed that the statements "provide evidence of the conspiracy's context that cannot be replicated, even if the declarant testifies to the same matters in court." *Inadi*, 475 U.S. at 395, 89 L. Ed. 2d at 398, 106 S. Ct. at 1126. Further, an "unavailability rule" would not likely "produce much testimony that adds anything to the 'truth-determining process.'" *Inadi*, 475 U.S. at 396, 89 L. Ed. 2d at 399, 106 S. Ct. at 1127, quoting *Dutton v. Evans*, 400 U.S. 74, 89, 27 L. Ed. 2d 213, 227, 91 S. Ct. 210, 220 (1970).

The same reasoning supports the introduction of the laboratory report without a showing of unavailability. The laboratory reports are prepared by analysts who are trained professionals. These analysts perform scientifically accepted tests on the substances, and they make objective measurements. Further, the analysts perform the tests as part of their regular duties. The context in which the laboratory reports are generated may cause the jury to place greater value on the report than on the testimony of the analysts at trials months removed from the time of testing. Further, each analyst will likely have performed hundreds of such tests and will not be able to recall individual tests. At trial, the analyst will have to rely on his or her notes and the laboratory report generated. Cross-examination "can be expected to add little to [the report's] reliability." *White*, 502 U.S. at 357, 116 L. Ed. 2d at 860, 112 S. Ct. at 743. See also *United States v. Roulette*, 75 F.3d 418 (8th Cir. 1996); *Manocchio v. Moran*, 919 F.2d 770 (1st Cir. 1990).

Turning next to the trustworthiness of the laboratory report, I believe the report is admissible because it bears adequate indicia of reliability. Pursuant to section 115—15, the laboratory report must be signed and sworn to by the analyst who tests the controlled substance. In addition, the analyst must submit a notarized statement giving her name and the name and location of the labo-

ratory where the analysis was performed. The analyst must state that she is employed by the Illinois State Police, division of forensic services, that she analyzed the substance at issue, that performing the analysis is a part of her regular duties, that she is qualified by her education, training, and experience to perform the analysis on the substance, that the tests she used are scientifically accepted and were performed with due caution, and that the evidence was handled in accordance with established and accepted procedures while in the custody of the laboratory. Thus, the analyst avers that she is a skilled and trained professional, experienced in performing such tests. It is difficult to perceive any incentive for the analyst to falsify the test results. It is extremely unlikely that the analyst would know the particular defendant involved in the case or have a personal interest in the test results; the analyst would jeopardize her professional career by presenting test results which could be shown to be false through retesting; and the analyst would subject herself to a charge of perjury by making a statement she knows to be false, in an affidavit to be used at trial. For these reasons, I conclude that the laboratory report bears sufficient indicia of reliability and is admissible. See *Sherman v. Scott*, 62 F.3d 136, 142 (5th Cir. 1995) ("Because the testimony of the supervisor demonstrated that the report had particularized guarantees of trustworthiness and because cross-examination of the chemists who prepared the report would have been of little use to [defendant], we find that the admission of the report did not violate the Confrontation Clause"); *Minner v. Kerby*, 30 F.3d 1311, 1314-15 (10th Cir. 1994) (finding that analyst's notes had sufficient particularized indicia of reliability because they concerned mechanically objective tests performed on the powder and were taken contemporaneously with the performance of the tests); *Manocchio*, 919 F.2d 770; *Reardon v. Manson*, 806 F.2d

39 (2d Cir. 1986) (when chemists who performed tests reported the results to their supervisor there was no realistic possibility that their statements were based upon faulty recollection, and they had no motive to jeopardize their careers by falsifying such information); *State v. Crow*, 266 Kan. 690, 974 P.2d 100 (1999) (finding that Kansas statute, which allowed admission of laboratory report into evidence, did not violate defendant's right to confront witnesses where statute required that a certificate (which would subject its preparer to the same perjury penalties as live trial testimony) be signed under oath by the party making the analysis); *DeRosa v. First Judicial District Court*, 115 Nev. ___, 985 P.2d 157 (1999) (affidavits of a laboratory evidence technician and an analyst were sufficiently trustworthy to be admitted over Confrontation Clause objections); *State v. LaRochelle*, 112 N.H. 392, 397, 297 A.2d 223, 226 (1972) ("scientifically reliable evidence, gathered and recorded pursuant to a public duty and admitted under [statute], carries sufficient characteristics of trustworthiness to be safely placed before the trier of fact without confrontation of the tester"); *State v. Hughes*, 713 S.W.2d 58, 61 (Tenn. 1986) ("justification for this intrusion upon the right of confrontation is found in the generally accepted reliability of reports of scientific test results conducted in accord with well established procedures, the absence of motive or opportunity of scientific personnel to falsify the reports and the likelihood that the lab technician's entire testimony and cross examination would be effectively limited to the contents of the report"); *State v. Sosa*, 59 Wash. App. 678, 684, 800 P.2d 839, 843 (1990) ("lab reports in general are routine examinations in which the persons conducting the analysis have no motive to falsify the report. They do not meet the arresting officers or have a chance to meet the suspect").

Although I have focused my discussion on the trust-

worthiness of the laboratory reports admitted under section 115—15 without reference to any firmly rooted hearsay exception, I note that several courts have held that the laboratory reports are admissible under the business records exception to the hearsay rule. *United States v. Garnett*, 122 F.3d 1016 (11th Cir. 1997); *Roulette*, 75 F.3d at 418; *United States v. Baker*, 855 F.2d 1353 (8th Cir. 1988); *State v. Smith*, 312 N.C. 361, 323 S.E.2d 316 (1984); *Williams v. State*, 734 So. 2d 1149 (Fla. App. 1999). See also *Howard v. United States*, 473 A.2d 835 (D.C. App. 1984) (allowing admission of Drug Enforcement Agency report and citing in support *United States v. Frattini*, 501 F.2d 1234 (2d Cir. 1974), *Kay v. United States*, 255 F.2d 476 (4th Cir. 1958), *United States v. Ware*, 247 F.2d 698 (7th Cir. 1957), *State v. Kreck*, 86 Wash. 2d 112, 542 P.2d 782 (1975) (*en banc*), *In re Kevin G.*, 80 Misc. 2d 517, 363 N.Y.S.2d 999 (1975), *Coulter v. State*, 494 S.W.2d 876 (Tex. Crim. App. 1973), *Commonwealth v. Harvard*, 356 Mass. 452, 253 N.E.2d 346 (1969), and *State v. Torello*, 103 Conn. 511, 131 A. 429 (1925)). These courts focus on the routine nature of the tests performed. Other courts have held that laboratory reports are admissible under the public records exception to the hearsay rule. *State v. Conway*, 70 Or. App. 721, 690 P.2d 1128 (1984); *State v. Smith*, 66 Or. App. 703, 675 P.2d 510 (1984); *State v. Huggins*, 659 P.2d 613 (Alaska App. 1982). These courts presume that public officers do their duty. " 'The fundamental circumstance is that an official duty exists to make an accurate statement, and that this special and weighty duty will usually suffice as a motive to incite the officer to its fulfilment.' " *State v. Smith*, 312 N.C. at 370, 323 S.E.2d at 321, quoting 5 J. Wigmore, Evidence § 1631 (Chadbourn rev. ed. 1974). Still other courts have held the laboratory reports admissible on varied grounds. See *United States v. Blackburn*, 992 F.2d 666 (7th Cir. 1993) (admissible under the residual

hearsay exception); *Fischer v. Powers*, 957 F.2d 609 (8th Cir. 1992); *State v. Christianson*, 404 A.2d 999 (Me. 1979) (statute only requires that a defendant follow a notice procedure prior to trial if he wants the testing chemist to testify in person as a witness called by the prosecution); *Moon v. State*, 300 Md. 354, 478 A.2d 695 (1984) (the legislature has safeguarded the defendant's sixth amendment right where the statute requires that the tester be produced, upon the defendant's request, before the evidence may be admitted despite its reliability); *Zoerner v. State*, 725 So. 2d 811 (Miss. 1998); *State v. Fischer*, 459 N.W.2d 818, 822 (N.D. 1990) (defendant's confrontation rights were safeguarded because he had the opportunity to subpoena and cross-examine the chemist who prepared the laboratory report); *State v. Hancock*, 317 Or. 5, 854 P.2d 926 (1993) (statute is a legislative decision to make in every case what amounts to an offer to stipulate to the laboratory report; if defendant refuses the offer, defendant may subpoena the analyst who prepared the report as a witness at trial at no cost to defendant); *People v. Mayfield-Ulloa*, 817 P.2d 603 (Colo. App. 1991) (defendant's failure to request testimony by the author of the laboratory report constituted a waiver of the right of confrontation); *State v. Kittrell*, 279 N.J. Super. 225, 652 A.2d 732 (1995) (statute may be construed to establish a constitutionally valid pretrial procedure for determining whether the State will be allowed to rely upon the certificate of its chemist).

The foregoing demonstrates numerous courts that have considered this issue have held that the admission of a laboratory report without the testimony of the analyst who prepares the report does not violate a defendant's right to be confronted with the witnesses against him. Notable exceptions are the supreme courts of Georgia and Montana. In *Miller v. State*, 266 Ga. 850, 472 S.E.2d 74 (1996), the court held that a statute allow-

ing the introduction of a laboratory report without the testimony of the analyst was unconstitutional. The court observed the statute did not "provide that the filing of an objection to the admission of the certificate [would] result in the lab analyst's appearance in court." *Miller*, 266 Ga. at 855, 472 S.E.2d at 79. Instead, the statute directed that "a defendant set forth 'specific grounds' that will be 'contested in good faith at trial' in order to be entitled to a judicial determination on whether the defendant will be confronted with the lab analyst or with the analyst's certificate." *Miller*, 266 Ga. at 856, 472 S.E.2d at 79. The court found a denial of defendant's right under the Georgia Constitution to "be confronted with the witnesses testifying against" him. *Miller*, 266 Ga. at 856, 472 S.E.2d at 79.

In *State v. Clark*, 290 Mont. 479, 964 P.2d 766 (1998), the court held that a portion of a rule which governed the introduction of crime laboratory reports violated the confrontation clause of the Montana Constitution. The court explained:

> "Unlike its federal counterpart, the text of Montana's Confrontation Clause specifically guarantees the accused's right 'to meet the witnesses against him face to face.' As we noted in *State v. Young* (1991), 249 Mont. 257, 260, 815 P.2d 590, 592, '[t]he 1972 Montana Constitution and subsequent cases analyzing the Confrontation Clause have made it abundantly clear that full cross-examination is a critical aspect of the right of confrontation.' " *Clark*, 290 Mont. at 486-87, 964 P.2d at 771.

The court concluded, "[i]n light of the fact that Montana's Constitution specifically guarantees a criminal defendant the right to a face-to-face confrontation with his or her accusers, and in light of the critical importance of an accused's fundamental right of confrontation," that the introduction of the laboratory report was improper. *Clark*, 290 Mont. at 487, 964 P.2d at 771.

Both *Miller* and *Clark* are distinguishable. Unlike the statutory provision at issue in *Miller*, section 115—15

does not require that a defendant set forth "specific grounds" that will be "contested in good faith at trial" to secure the testimony of the analyst. To the contrary, section 115—15 provides that "the report shall not be prima facie evidence of the contents, identity, and weight of the substance if the accused or his or her attorney demands the testimony of the person signing the report." 725 ILCS 5/115—15(c) (West 1998). Thus, the reasoning of the Georgia Supreme Court is inapposite. Likewise, the reasoning of the Montana Supreme Court is inapposite. Prior to 1994, the confrontation clause of the Illinois Constitution provided that "[i]n criminal prosecutions, the accused shall have the right *** to meet the witnesses face to face and to have process to compel the attendance of witnesses in his behalf." In 1994, the clause was amended to delete the reference to face-to-face confrontation. Thus, the confrontation clause of the Illinois Constitution no longer mirrors the confrontation clause of the Montana Constitution. To the extent that the Montana Supreme Court believes the confrontation clause of the Montana Constitution affords greater protection to an accused than the confrontation clause of the United States Constitution, its reasoning does not compel a similar conclusion in interpreting the confrontation clause of the Illinois Constitution.

I am of the opinion that section 115—15 does not violate a defendant's right to be confronted with the witnesses against him. The section allows the introduction of evidence which contains particularized guarantees of trustworthiness. The demand provision in section 115—15 further safeguards a defendant's right under the confrontation clause. As noted above, any defendant who wishes to contest the laboratory report may require the prosecution to present the analyst as a witness at trial merely by filing a demand requesting the testimony of the analyst. The defendant is not required to set forth

the grounds upon which he objects to the laboratory report. Nor is the trial court required to make a determination that the laboratory report is flawed in any way, and therefore inadmissible. Instead, section 115—15 dictates that the laboratory report shall not be *prima facie* evidence of the contents, identity, and weight of the substance tested if the defendant demands the presence of the analyst at trial.

The analyst who prepares the laboratory report will have prepared reports in a number of cases. In cases where the analyst is called to testify, the questioning is often brief and unenlightening. The analyst does not recall each test performed and the results thereof. Instead, the analyst testifies by reviewing the report. The trial testimony of the analyst is costly to the State, and does not provide great benefit to the defendant. In other cases, the laboratory report is admitted by stipulation of the parties. The defendant realizes that the test performed is routine, and knows the results cannot be assailed. Meanwhile the State realizes certain savings since it does not have to present the analyst at trial. Section 115—15 is akin to an offer to stipulate to the laboratory report. See *DeRosa*, 115 Nev. at ___, 985 P.2d at 162; *Hancock*, 317 Or. at 12, 854 P.2d at 929-30. If the defendant knows that the test results are correct, he may dispense with the presence of the analyst. If the defendant believes that the test results are incorrect, that the tests performed are not generally acceptable, that the analyst is unqualified, or the test should not be admitted for whatever reason, the defendant can decline to stipulate to the laboratory report. The defendant thus determines whether the analyst's presence will be required at trial.

The majority holds that a defendant cannot be required to take an affirmative step to secure his right under the confrontation clause, whether the affirmative

step consists of filing a demand requesting the production of a witness at trial, or the issuance of a subpoena to secure the presence of the witness as a hostile witness. I disagree. The demand provision in section 115—15, considered alone or in conjunction with the defendant's right to subpoena witnesses, does not constitute an impermissible burden upon the defendant's constitutional right.

As noted above, in *Inadi* the Supreme Court determined that a showing of unavailability was not required for the admission of a co-conspirator's statements. The Supreme Court noted that the benefits to the respondent in adopting an "unavailability rule" would be small:

> "The declarant himself may be facing indictment or trial, in which case he has little incentive to aid the prosecution, and yet will be equally wary of coming to the aid of his former partners in crime. In that situation, it is extremely unlikely that in-court testimony will recapture the evidentiary significance of statements made when the conspiracy was operating in full force." *Inadi*, 475 U.S. at 395, 89 L. Ed. 2d at 399, 106 S. Ct. at 1126.

Conversely, an "unavailability rule" would place a "significant practical burden on the prosecution." *Inadi*, 475 U.S. at 399, 89 L. Ed. 2d at 401, 106 S. Ct. at 1128. In every case, the government would be required to locate each declarant, and ensure his continuing availability at trial. The Supreme Court then observed:

> "If respondent independently wanted to secure [the co-conspirator's] testimony, he had several options available, particularly under Federal Rule of Evidence 806, which provides that if the party against whom a co-conspirator statement has been admitted calls the declarant as a witness, 'the party is entitled to examine him on the statement as if under cross-examination.' Rule 806 would not require respondent to make the showing necessary to have [the co-conspirator] declared a hostile witness, although presumably that option also was available to him. *** If the Government has no desire to call a co-conspirator declarant as a witness, and if the defense has not chosen to

subpoena such a declarant, either as a witness favorable to the defense, or as a hostile witness, or for cross-examination under Federal Rule of Evidence 806, then it is difficult to see what, if anything, is gained by a rule that requires the prosecution to make that declarant 'available.' " *Inadi*, 475 U.S. at 397-98, 89 L. Ed. 2d at 400, 106 S. Ct. at 1127-28.

The Supreme Court concluded:

"Any marginal protection to the defendant by forcing the government to call as witnesses those co-conspirator declarants who are available, willing to testify, hostile to the defense and yet not already subpoenaed by the prosecution, when the defendant himself can call and cross-examine such declarants, cannot support an unavailability rule. We hold today that the Confrontation Clause does not embody such a rule." *Inadi*, 475 U.S. at 399-400, 89 L. Ed. 2d at 401, 106 S. Ct. at 1128.

Thus, under the holding of *Inadi*, the prosecution is not required to produce a declarant at trial where the declarant's statement contains adequate indicia of reliability, the declarant's testimony at trial will not be of great benefit to the defendant, and the defendant does not avail himself of the right to call the declarant as a witness for the defense or as a hostile witness. In the present case, the laboratory report contained adequate indicia of reliability and the testimony of the analyst at trial would not likely have benefitted defendant. Defendant could have demanded that the State produce the analyst as a witness at trial, or could have subpoenaed the analyst. Defendant failed to do either. Under these circumstances, I believe the requirements of the confrontation clause were met. See *Fischer*, 459 N.W.2d at 821-22.

In sum, I believe that section 115—15 is constitutional. The statute represents a reasonable compromise between a defendant's right to be confronted with the witnesses against him and the State's interest "in effective law enforcement, and in the development and precise formulation of the rules of evidence applicable in crimi-

nal proceedings." *Roberts*, 448 U.S. at 64, 65 L. Ed. 2d at 607, 100 S. Ct. at 2538. Section 115—15 is a practical provision which allows into evidence laboratory reports bearing adequate indicia of reliability. The provision further safeguards the defendant's right under the confrontation clause by affording the defendant an unfettered right to demand the presence of the analyst at trial. The defendant may stipulate to the admission of the laboratory report, demand the production of the analyst at trial for any reason whatsoever, or subpoena the analyst. Pursuant to section 115—15, I would hold that the laboratory results were properly admitted into evidence at defendant's trial.

JUSTICE McMORROW joins in this dissent.