FIFTH DIVISION
 MARCH 15, 2002

No. 1-00-1855

THE PEOPLE OF THE STATE OF ILLINOIS, ) APPEAL FROM THE
 ) CIRCUIT COURT
 Plaintiff-Appellee, ) OF COOK COUNTY.
 )
v. )
 )
DAVID ULLRICH, ) HONORABLE
 ) PETER A. FLYNN,
 Defendant-Appellant. ) JUDGE PRESIDING.

 PRESIDING JUSTICE CAMPBELL delivered the opinion of the court:
 On February 20, 2000, defendant David Ullrich was arrested and
charged with (among other things) driving under the influence of alcohol.
See 625 ILCS 5/11-501 (West 2000). The arresting officer served Ullrich
with a notice of a statutory summary suspension of his driver's license,
stating that Ullrich refused to submit to chemical testing. Ullrich
appeals an order of the circuit court of Cook County denying his Petition
to Rescind the Statutory Summary Suspension.
 The record discloses that Ullrich filed his petition on February 24,
2000, alleging that the police lacked reasonable grounds for arrest and
failed to warn him of the consequences of refusing to submit to testing.[1]
 Ullrich answered ready on March 14, 2000, but the trial court had not
received a legally required confirmation of the suspension from the
Secretary of State. The case then was continued at the request of the
State, keyed to the arresting officer's schedule.
 On March 23, 2000, no police witnesses appeared. The transcript of
proceedings contains a statement by the prosecutor that "we did notify our
officers, and if they are called to 26th and California, they have to go."
The State elected to proceed, based on the court's review of the law
enforcement officer's own official reports. The record does not show that
the trial court or the State informed Ullrich that he could subpoena the
police officer or officers. Tina Moreth, Ullrich's girlfriend, testified
that on the night in question, she had been driving the automobile and had
the keys thereto in her possession. Moreth testified that at approximately
3 a.m., after meeting with friends, she and Ullrich had gone back to the
car to get money for breakfast. Moreth stated that two Chicago Police
Officers stopped them before they could even touch the car. Moreth argued
with the officers. According to Moreth, the police cursed at her, told her
to shut up and threatened to arrest her. Moreth stated that she walked
away, with the keys to Ullrich's car.
 Ullrich testified that after Moreth left, the police asked him who
owned the car. According to Ullrich, when he replied that he owned the
car, the police immediately spun him around, placed him in handcuffs and
arrested him. Ullrich stated that he was not given any statutory warnings
prior to his arrest.
 Ullrich testified that the police took him to the police station at
Grand and Central Avenues, where he was asked to blow into a machine.
Ullrich again stated that he was not given any statutory warnings regarding
the test. According to Ullrich, he refused to take a breath test because
he had not been driving. After he was released from the police station,
Ullrich retrieved his automobile from the Chicago Auto Pound. Ullrich
stated that he had a spare set of keys underneath his car seat.
 Ullrich rested. The State moved for a directed finding. The trial
court denied the State's motion, finding that Ullrich had presented a prima
facie case for recission. The State then offered into evidence an alcohol
influence report, a field report, an arrest report, and the arresting
officer's sworn report regarding Ullrich. The trial court accepted these
reports, over Ullrich's objections.
 The officer's sworn report stated that Ullrich was stopped after he
pulled out of a driveway without activating his headlights and almost
struck another vehicle. The sworn report stated that Ullrich had a strong
odor of alcohol on his breath, glassy bloodshot eyes, and a flushed face.
An accompanying "Warning to the Motorist" form stated that the motorist's
license would be suspended if he refused to submit to all chemical tests
requested; this form, like the sworn report, purported to be certified
under section 1-109 of the Illinois Code of Civil Procedure (735 ILCS 5/1-
109 (West 2000)). Both the sworn report and the warning bear the last name
of the officer and an "identifying number."
 The officer's unsworn alcohol influence report contained much of the
same information as was contained in the sworn report. The unsworn alcohol
influence report added that Ullrich was observed wobbling and staggering.
The unsworn alcohol influence report also quoted Ullrich as stating, "you
didn't catch me driving, my girlfriend was driving," and "I don't want to
blow, because if their's [sic] evidence I'll win just like 3 years ago."
 The officer's unsworn field report expressly states that the police
observed Ullrich "driving with the motor running" and the keys in the
ignition. The officer's unsworn arrest report contains similar information
about the incident.
 Following closing arguments, the trial court denied Ullrich's
petition. The trial court stated that the testimony of Ullrich and Ms.
Moreth had "a number of rather troubling elements in it." The trial court
also questioned the consistency of their testimony. Yet the trial court
noted that the recitations in the police reports were such that one might
expect that Ullrich would have been ticketed for some infraction arising
from the near-collision described in the reports.
 On April 21, 2000, Ullrich filed a motion to reconsider. The trial
court denied Ullrich's motion on May 10, 2000. Ullrich then filed a timely
Notice of Appeal to this court.
 On appeal, Ullrich primarily argues that the trial court's
consideration of unsworn police reports and hearsay contained in the
officer's sworn reports violated Ullrich's right to due process of law.
Ullrich also argues that the trial court improperly rejected his evidence
and that the decision was against the manifest weight of the evidence.
These latter arguments are related to the former arguments, insofar as they
are affected by the consideration of the police reports.
 Section 2-118.1(b) of the Illinois Vehicle Code, which sets forth the
procedure for seeking to rescind a statutory summary suspension of a
driver's license, provides as follows:
 "(b) Within 90 days after the notice of statutory summary
 suspension served under Section 11-501.1, the person may make a
 written request for a judicial hearing in the circuit court of
 venue. The request to the circuit court shall state the grounds
 upon which the person seeks to have the statutory summary
 suspension rescinded. Within 30 days after receipt of the
 written request or the first appearance date on the Uniform
 Traffic Ticket issued pursuant to a violation of Section 11-501,
 or a similar provision of a local ordinance, the hearing shall
 be conducted by the circuit court having jurisdiction. This
 judicial hearing, request, or process shall not stay or delay
 the statutory summary suspension. The hearings shall proceed in
 the court in the same manner as in other civil proceedings.
 The hearing may be conducted upon a review of the law
 enforcement officer's own official reports; provided however,
 that the person may subpoena the officer. Failure of the
 officer to answer the subpoena shall be considered grounds for a
 continuance if in the court's discretion the continuance is
 appropriate.
 The scope of the hearing shall be limited to the issues
 of:
 ***
 2. Whether the officer had reasonable grounds to believe
 that the person was driving or in actual physical control of a
 motor vehicle upon a highway while under the influence of
 alcohol, other drug, or combination of both; and
 3. Whether the person, after being advised by the officer
 that the privilege to operate a motor vehicle would be suspended
 if the person refused to submit to and complete the test or
 tests, did refuse to submit to or complete the test or tests to
 determine the person's alcohol or drug concentration ***." 625
 ILCS 5/2-118.1(b) (West 2000).
"It is clear that the due process clause applies to the deprivation of a
driver's license by the State." People v. Orth, 124 Ill. 2d 326, 334, 530
N.E.2d 210, 214 (1988), citing Bell v. Burson, 402 U.S. 535, 539, 29 L. Ed.
2d 90, 94, 91 S. Ct. 1586, 1589 (1971). The purpose of section 2-118.1 is
to provide a motorist with due process of law. People v. Holmes, 268 Ill.
App. 3d 802, 806, 644 N.E.2d 1, 3 (1994).
 As noted above, section 2-118.1 hearings are judicial, proceeding in
the same manner as other civil proceedings, but they also serve as an
"administrative device." 625 ILCS 5/2-118.1(b) (West 2000); People v.
Moore, 138 Ill. 2d 162, 167-68, 561 N.E.2d 648, 650-51 (1990). Where state
action seriously injures a person, and the reasonableness of the action
depends on factual findings, especially when based on testimony by people
whose memory might be faulty, or who might be perjurers or motivated by
malice, vindictiveness, prejudice, or jealousy, due process requires
confrontation and cross-examination, not only in criminal cases, but also
in all types of cases where administrative actions are under scrutiny. See
Goldberg v. Kelly, 397 U.S. 254, 270, 25 L. Ed. 2d 287, 300, 90 S. Ct.
1011, 1021 (1970). The requirements of due process in a particular case
vary, depending upon: (1) the significance of the private interest
affected by the official action; (2) the risk of the erroneous deprivation
of such interest through the procedures used, and probable value, if any,
of additional or substitute procedural safeguards; and (3) the significance
of the State interest, including the function involved and the fiscal and
administrative burdens that additional or substitute procedural safeguards
would impose. E.g., Mackey v. Montrym, 443 U.S. 1, 11, 61 L. Ed. 2d 321,
329-30, 99 S. Ct. 2612, 2617 (1979).
 In Orth, our supreme court considered whether placing the burden of
proof upon the motorist in section 2-118.1 hearings denied the motorist due
process of law, applying the three factors from Mackey. The court stated
that the private interest in a driver's license is significant,
particularly where driving is essential to the motorist's livelihood, but
not as important as those private interests previously held indefeasible
absent the satisfaction by the State of a specified burden of proof. Orth,
124 Ill. 2d at 335, 530 N.E.2d at 214. The court also noted that the
statute contains safeguards to ensure that the suspended motorist could
continue to use his vehicle for essential purposes while challenging the
validity of his suspension. Orth, 124 Ill. 2d at 335, 530 N.E.2d at 214.
Thus, the court concluded that the first factor did not weigh in favor of
placing the burden of proof on the State.
 The supreme court considered the risk of erroneous deprivation as
more problematic. Orth, 124 Ill. 2d at 335, 530 N.E.2d at 214. The court
concluded that State law enforcement personnel are unlikely to be lax in
their breathalyzer procedures if they know that they may have to prove the
results or face the rescission of a summary suspension. Orth, 124 Ill. 2d
at 336, 530 N.E.2d at 215. This factor favored placing the burden of proof
upon the State. Orth, 124 Ill. 2d at 336, 530 N.E.2d at 215.
 The Orth court considered that the State's interest in preserving the
safety of its highways is extremely important. Orth, 124 Ill. 2d at 336,
530 N.E.2d at 215. Because the State could still remove suspect motorists
from the road before a hearing, and no suspended driver could reclaim his
license until the conclusion of the hearing, this interest was deemed to be
less pressing than it is in cases attacking the overall propriety of pre-
hearing summary suspensions. Orth, 124 Ill. 2d at 336, 530 N.E.2d at 215.
Nevertheless, the court concluded that placing the burden of proof upon the
State would undeniably entail significantly greater fiscal and
administrative burdens. Orth, 124 Ill. 2d at 336-37, 530 N.E.2d at 215.
 Accordingly, the Orth court held that placing the burden of proof
upon the suspended motorist would not violate his due process rights.
Orth, 124 Ill. 2d at 337, 530 N.E.2d at 215. However, the supreme court
stated that its ruling was "heavily influenced" by its later holding that
the State has the burden to show the reliability of test results if the
motorist makes a prima facie showing of unreliability. Orth, 124 Ill. 2d
at 337, 530 N.E.2d at 215.
 Considering the possibility that on remand the motorist could
establish a prima facie case, the State argued in Orth that breathalyzer
results may be admitted in a rescission hearing without laying the usual
foundation, relying on the statute's provision that "[t]he hearing may be
conducted upon a review of the law enforcement officer's own official
reports; provided, however, that the petitioner may subpoena the officer."
Orth, 124 Ill. 2d at 338, 530 N.E.2d at 216; see 625 ILCS 5/2-118.1(b)
(West 2000). The supreme court rejected that argument, noting other
provisions of law addressed the admissibility of chemical test results.
The court held that once the motorist has made a prima facie case that the
breath test result did not disclose a blood-alcohol concentration of 0.10
or more, or that the test result was inaccurate, the State can only avoid
rescission by moving for the admission of the test into evidence and laying
the required foundation. Orth, 124 Ill. 2d at 340, 530 N.E.2d at 216.
 The supreme court then considered what evidence presented by the
motorist will constitute a prima facie case for rescission. The court
stated that "such evidence may consist of any circumstance which tends to
cast doubt on the test's accuracy, including, but not limited to, credible
testimony by the motorist that he was not in fact under the influence of
alcohol." Orth, 124 Ill. 2d at 341, 530 N.E.2d at 217. However, "[o]nly
if the trial judge finds such testimony credible will the burden shift to
the State to lay a proper foundation for the admission of the test
results." Orth, 124 Ill. 2d at 341, 530 N.E.2d at 217.
 Orth is consistent with section 2-1110 of the Illinois Code of Civil
Procedure, which governs motions for a finding or judgment at the close of
a plaintiff's case in a non-jury trial. 735 ILCS 5/2-1110 (West 2000).
Section 2-1110 provides that the trial court "shall weigh the evidence,
considering the credibility of the witnesses and the weight and quality of
the evidence." 735 ILCS 5/2-1110 (West 2000). Thus, unlike a motion for a
directed verdict in a jury trial, the trial court does not view the
evidence most favorably to the non-movant, but decides whether the non-
movant has made out a prima facie case, then weighs the evidence, including
that favoring the movant; if this weighing process negates evidence
necessary to the prima facie case, the court should enter judgment.
Kokinis v. Kotrich, 81 Ill. 2d 151, 154-55, 407 N.E.2d 43, 55 (1980);
Zankle v. Queen Anne Landscaping, 311 Ill. App. 3d 308, 311, 724 N.E.2d
988, 992 (2000). In this case, the trial court's denial of the State's
section 2-110 motion necessarily implies that Ullrich presented
sufficiently credible evidence to establish and sustain a prima facie case
for recission of the summary suspension. Thus, the question is whether due
process permits the trial court to decide that the prima facie case was
negated solely by the officer's reports.
 Ullrich relies on Orth to argue that after he presented a prima facie
case, the State may be required to produce evidence beyond the officer's
sworn report. It could be argued that an officer's assertions of
historical fact in a sworn report should be treated differently from that
officer's recording of breathalyzer test results, as some of the
foundational facts for admitting the latter may rest outside the officer's
personal knowledge.[2] Given that section 2-118.1 allows the court to
decide the case on the officer's official reports, the sworn report may be
compared to an affidavit, but ex parte affidavits have long been considered
the weakest and most unsatisfactory evidence. Franklin Union, No. 4, v.
People, 220 Ill. 355, 390, 77 N.E. 176, 188-89 (1906). Even when evidence
may be submitted by affidavit, where the facts are disputed, the proof
should be presented by the examination of witnesses, under oath, subject to
cross-examination. See, e.g., Wilson v. Wilson, 56 Ill. App. 2d 187, 195,
205 N.E.2d 639, 640 (1965).
 Indeed, trial by affidavit raises confrontation and cross-examination
concerns, and has been consistently condemned by Illinois courts in
criminal, civil, and administrative review cases since the 19th Century.
People v. McClanahan, 191 Ill. 2d 127, 729 N.E.2d 470 (2000); Balmoral
Racing Club, Inc. v. Illinois Racing Bd., 151 Ill. 2d 367, 400-01, 603
N.E.2d 489, 503 (1992); People ex rel. Chicago Bar Ass'n v. Amos, 246 Ill.
299, 302-03, 92 N.E. 857, 859 (1910); Union Mut. Life Ins. Co. v. Slee, 123
Ill. 57, 94-95, 13 N.E. 222, 228 (1887); Becker v. Quigg, 54 Ill. 390, 394
(1870); Whiteside v. Pulliam, 25 Ill. 285, 287 (1861). "[T]he rule against
hearsay evidence 'is founded on the necessity of an opportunity for cross-
examination, and is a basic and not a technical rule.'" Grand Liquor Co. v.
Dept. of Revenue, 67 Ill. 2d 195, 199, 367 N.E.2d 1238, 1240 (1977),
quoting Novicki v. Dept. of Finance, 373 Ill. 342, 344, 26 N.E.2d 130, 131
(1940). It cannot be doubted that a statute admitting police reports must
account for these constitutional concerns. See U.S. Const., art. VI, cl.
2.
 In McClanahan, our supreme court struck down a statute admitting
sworn police laboratory reports in drug cases, provided that a report would
not be prima facie evidence of the substance analyzed if the accused
demanded the testimony of the person signing the report. Our supreme court
noted that the statute did not guarantee that any waiver of an accused's
confrontation rights was knowing and voluntary. McClanahan, 191 Ill. 2d at
137, 729 N.E.2d at 476-77. The court also "emphatically reject[ed] any
notion that the State's constitutional obligation to confront the accused
with the witnesses against him can be satisfied by allowing the accused to
bring the State's witnesses into court himself and cross-examine them as
part of his defense." McClanahan, 191 Ill. 2d at 139, 729 N.E.2d at 477.
 McClanahan, similar to this case, involved reports generated by the
State as part of an investigation. Such reports (unlike medical reports,
business records, public records, or other documents traditionally admitted
under an exception to the hearsay rule) are generally deemed inadmissible
hearsay, because reports relating to criminal investigations or anticipated
litigation lack indicia of trustworthiness and reliability. See, e.g.,
People v. Smith, 141 Ill. 2d 40, 68-76, 565 N.E.2d 900, 912-16 (1990). The
admission of police reports gives rise to serious confrontation and cross-
examination concerns. See Smith, 141 Ill. 2d at 76, 565 N.E.2d at 916.
 Of course, McClanahan and Smith were criminal cases; this case is
not. However, in Balmoral Racing Club, Inc. v. Illinois Racing Bd., 151
Ill. 2d 367, 400-01, 603 N.E.2d 489, 503 (1992), which involved
administrative review, our supreme court stated that "affidavits offered to
establish the truth of a matter at issue in the agency or on review should
not be considered unless subject to some sort of adversarial examination."
Our supreme court stated that it would be "a miscarriage of justice" and "a
violation of basic due process protections" to consider an unexamined
affidavit to establish the truth of a matter asserted. Balmoral Racing
Club, Inc., 151 Ill. 2d at 401, 603 N.E.2d at 503.
 In this case, the trial court admitted the reports to show the
officer's state of mind. Statements showing a declarant's state of mind
are admissible as exceptions to the hearsay rule when the declarant is
unavailable to testify. People v. Floyd, 103 Ill. 2d 541, 546, 470 N.E.2d
293, 295 (1984). There is no showing of unavailability here. Moreover,
the reports were admitted not only to show the officer's state of mind as
to whether there were reasonable grounds to ask for a breath test, but also
for the truth of matters asserted therein, i.e., that Ullrich was in
control of the automobile and was warned of the consequences of refusing
the breath test.[3] Thus, the constitutional concerns raised by the
admission of such hearsay remain.
 The State relies heavily upon People v. Gafford, 218 Ill. App. 3d
492, 498, 578 N.E.2d 583, 587 (1991), in which the Second District of this
court ruled that a trial court could rely on uncorroborated hearsay in
sworn and unsworn[4] police reports to deny a petition to rescind, where
the petitioner did not subpoena the arresting officer. Gafford relied on
section 2-118.1 for its ruling, but the issue was discussed more as one of
the sufficiency of the evidence than as one of due process. In that
context, Gafford cites Moore, in which our supreme court stated that the
trial court "may rely on law enforcement officers' official reports in the
absence of the officers themselves." Moore, 138 Ill. 2d at 167, 561 N.E.2d
at 650. However, Moore merely paraphrases the statute; the issue in Moore
was whether the results of statutory summary suspension hearings could act
as collateral estoppel in a later criminal proceeding. Moore, 138 Ill. 2d
at 167, 561 N.E.2d at 651. Moore did not address the due process questions
raised here.
 Moreover, while Gafford cites Orth for the proposition that the
burden is on the motorist, it does not discuss Orth's holding that the
burden of proof shifts if the motorist presents a prima facie case for
recission. Nor does Gafford address the Orth court's statement that this
latter holding "heavily influenced" its ruling that the statute did not
violate due process. See Gafford, 218 Ill. App. 3d at 498, 578 N.E.2d at
586.
 The closest Gafford comes to the issue of due process may be found in
a single paragraph:
 "Finally, we are also not persuaded by defendant's
 impassioned plea that he did not have a fair and just hearing
 because he was denied the opportunity to cross-examine and
 impeach the 'vacationing' police officer. Defendant cannot now
 complain that he did not have this opportunity when he did not
 take advantage of his right to subpoena the officer and objected
 to the State's request for a continuance so that the officer
 could be present." Gafford, 218 Ill. App. 3d at 499, 578 N.E.2d
 at 588.
As can be seen, the Gafford court cited no authority on this point; it is
possible that Gafford cited none in his appeal. Certainly, if Gafford
failed to cite to relevant authority in his appeal, the issue may be deemed
waived. 177 Ill. 2d R. 341(e)(7). Moreover, Gafford was correctly decided
to the extent that Gafford objected to the State's attempt to produce the
arresting officer's testimony. A party cannot complain of an alleged error
which he or she induced the court to make. McMath v. Katholi, 191 Ill. 2d
251, 255, 730 N.E.2d 1, 3 (2000).
 In this case, Ullrich did not object to any attempt by the State to
continue the case to obtain the reporting officer's testimony. Instead,
the record shows that Ullrich objected to admitting various police reports,
argued that considering some of the State's hearsay evidence would violate
his due process rights, and complained about the absence of the police
officers. Ullrich has supported his due process argument with citations to
relevant authority. Unlike Gafford, Ullrich cannot be said to have waived
his due process argument in those regards.
 The State is left with the argument that Ullrich waived his due
process rights by failing to take advantage of his right to subpoena the
officer. In Richardson v. Perales, 402 U.S. 389, 402, 28 L. Ed. 2d 842,
853, 91 S. Ct. 1420, 1429 (1971), the Supreme Court held that a claimant
could be denied Social Security disability benefits based on written
medical reports, despite their hearsay character, where the claimant had
not subpoenaed the reporting physicians.
 Perales, however, differs from this case on a number of grounds. The
"substantial evidence" standard applied to Social Security disability
benefit hearings is lower than the preponderance of the evidence standard
applicable to section 2-118.1 hearings. See Perales, 402 U.S. at 402, 28
L. Ed. 2d at 853, 91 S. Ct. at 1429; Consolo v. Federal Maritime Comm'n,
383 U.S. 607, 620, 16 L. Ed. 2d 131, 140, 86 S. Ct. 1018, 1026-27 (1966);
In re Trainor, 156 Ill. App. 3d 918, 921, 510 N.E.2d 614, 616-17 (1987).
Also, Perales did not involve the termination of benefits already granted.
Perales, 402 U.S. at 407, 28 L. Ed. 2d at 855-56, 91 S. Ct. at 1430. This
case involves the suspension of a driver's license already obtained by
Ullrich.
 Administrative burdens and costs would be imposed by requiring live
testimony in either type of hearing. Perales, 402 U.S. at 406, 28 L. Ed.
2d at 855, 91 S. Ct. at 1430; Orth, 124 Ill. 2d at 336-37, 530 N.E.2d at
215. That concern was not controlling in Perales. 402 U.S. at 407, 28 L.
Ed. 2d at 855, 91 S. Ct. at 1430. Nor was it controlling in Orth, to the
extent that the State may be required to go beyond the officer's reports.
A rule that the motorist must preemptively subpoena the officer or risk a
defeat based solely on the reports would impose its own costs and burdens
on the State, unless the rule is allowed to become a trap for those unaware
of it.
 The Perales Court further stated that "the specter of questionable
credibility and veracity is not present" regarding the medical reports.
402 U.S. at 407, 28 L. Ed. 2d at 856, 91 S. Ct. at 1430. An agency or
court may be able to rely on a corroborated sworn report by a police
officer as impartial in the context of a pre-deprivation driver's license
suspension process. Mackey, 443 U.S. at 14, 61 L. Ed. 2d at 332, 99 S. Ct.
at 2619. A section 2-118.1 hearing may occur either before or after the
effective date of the suspension, depending largely upon the motorist's
diligence in seeking review. See People v. Esposito, 121 Ill. 2d 491, 507,
521 N.E.2d 873, 880 (1988). Thus, a section 2-118.1 hearing may be
characterized as a pre-deprivation hearing. See Illinois v. Batchelder,
463 U.S. 1112, 1118, 77 L. Ed. 2d 1267, 1272, 103 S. Ct. 3513, 3516 (1983)
(construing statutory predecessor to section 2-118.1); People v. Gerke, 123
Ill. 2d 85, 91-92, 525 N.E.2d 68, 71 (1988) (measuring the constitutional
import of any delay in the hearing from the effective date of the
suspension); People v. Sarver, 262 Ill. App. 3d 513, 515, 636 N.E.2d 1031,
1032 (1994).[5]
 However, Batchelder held that due process did not require an
officer's affidavit to recite specific facts supporting the officer's
beliefs because the motorist had the right to a hearing before his or
license was suspended. Batchelder, 463 U.S. at 1119, 77 L. Ed. 2d at 1273,
103 S. Ct. at 3517. Such a hearing would be worthless if the trial court
could then rely entirely on the non-specific report; the Court obviously
envisioned that further evidence would be adduced at the hearing.
Similarly, the Mackey Court stated that pre-deprivation procedures need
only provide a reasonably reliable basis for concluding that the facts
justifying an official action are as a responsible government official
warrants them to be, when prompt post-deprivation review is available for
the correction of administrative error. Mackey, 443 U.S. at 13, 61 L. Ed.
2d at 331, 99 S. Ct. at 2618. The Mackey Court also stated that:
 "even when disputes as to the historical facts do arise, we are
 not persuaded that the risk of error inherent in the statute's
 initial reliance on the representations of the reporting officer
 is so substantial in itself as to require that the Commonwealth
 stay its hand pending the outcome of any evidentiary hearing
 necessary to resolve questions of credibility or conflicts in
 the evidence." Mackey, 443 U.S. at 15, 61 L. Ed. 2d at 333, 99
 S. Ct. at 2619 (emphases added).
 In this case, a motorist cannot seek to rescind a suspension that
does not exist; thus, post-suspension review does not involve an initial
reliance on the officer's sworn report. Moreover, while the Illinois
Vehicle Code in some cases provides for the lifting of a statutory summary
suspension after some portion of it has been completed, or the issuance of
a limited driving permit, the State identifies no other method for
recission of a statutory summary suspension. See 625 ILCS 5/2-206.1, 2-
208.1 (West 2000). Thus, a section 2-118.1 hearing, regardless of whether
it constitutes pre- or post-deprivation review, must provide an opportunity
for resolving questions of credibility and fact, as contemplated by
Batchelder and Mackey. A prompt hearing reduces the risk that a driver
will be erroneously deprived of his or her license, but does not eliminate
a constitutional defect in the hearing itself, which is what is alleged
here.
 Perales involved the consideration of multiple independent,
consistent medical evaluations, prepared by presumably unbiased physicians,
traditionally admitted at trials under an exception to the hearsay rule.
See 402 U.S. at 402-06, 28 L. Ed. 2d at 853-55, 91 S. Ct. at 1428-29. In
this case, as noted above, police reports prepared in an investigation or
in anticipation of litigation generally lack the indicia of trustworthiness
and reliability to be admitted as an exception to the hearsay rule.
Outside the sort of initial reliance on sworn police statements approved in
Mackey, courts have recognized that the relationship between police
officers and their arrestees is more personal and adversarial than that of
those who prepare scientific or medical reports. See, e.g., United States
v. Bell, 785 F.2d 640, 644 (8th Cir. 1986). Even when considering sworn
live testimony, police officers traditionally have not been presumed to
tell the truth as a matter of law. E.g., People v. Hawkins, 243 Ill. App.
3d 210, 222, 611 N.E.2d 1069, 1078 (1993).
 In short, section 2-118.1, like the scheme in Perales, seeks to avoid
constitutional problems of confrontation and cross-examination by linking
consideration of the official reports to the motorist's right to subpoena
the officer. This case differs from Perales in a number of significant
respects that may suggest the State cannot rebut a prima facie case with
the officer's official reports alone. On the other hand, a section 2-118.1
hearing is an administrative device, not a criminal proceeding like
McClanahan. In this context, the Supreme Court has held that a court or
agency may rely to some degree on a sworn police report, so long as the
motorist ultimately has an opportunity for cross-examination at an
evidentiary hearing.
 A statute is presumed to be constitutional; the party challenging its
validity has the burden to clearly establish invalidity. Russell v.
Department of Natural Resources, 183 Ill. 2d 434, 441, 701 N.E.2d 1056,
1059-60 (1998). Ullrich has not clearly established that section 2-118.1
is unconstitutional in this case. Thus, we hold that the motorist's right
to subpoena the officer affords an adequate opportunity for cross-
examination in the context of these proceedings.
 Moreover, the motorist may waive his or her right to subpoena the
officer. Statutory and constitutional rights may be waived as long as the
waiver is knowing, voluntary, and intentional. E.g., Suburban Downs, Inc.
v. Illinois Racing Bd., 316 Ill. App. 3d 404, 414-15, 735 N.E.2d 697, 704-
05 (2000); In re Estate of Ferguson, 313 Ill. App. 3d 931, 937, 730 N.E.2d
1205, 1210 (2000). To waive rights intelligently and knowingly, one
must at least understand basically what those rights encompass and
minimally what their waiver will entail. E.g., In re W.C., 167 Ill. 2d
307, 328, 657 N.E.2d 908, 919 (1995).[6]
 In this case, the Secretary of State's confirmation of the suspension
directs the motorist to review information on the reverse of the notice
outlining procedures for reinstating driving privileges, judicial review
and restricted permits. The reverse side of the court copy in the record
on appeal is blank. Nor do the transcripts of proceedings show that the
motorist was informed of his right to subpoena and the potential
consequences of not exercising it.
 Moreover, the trial court here continued the case, at the State's
request, to a date keyed to the arresting officer's schedule, which may
have unintentionally lulled Ullrich into believing he would be able to
question the officer at the hearing. This court has warned of the danger
that the State could effectively defeat a motorist's rights by discouraging
an officer from appearing. See People v. Tran, 319 Ill. App. 3d 841, 843,
746 N.E.2d 320, 322 (2001). In this case, it seems that the State notified
the officers and that they intended to appear, but were required to appear
elsewhere. Nevertheless, this case demonstrates the danger raised where
there is no showing that the motorist was informed of his right to subpoena
and the consequences of failing to exercise it, and knowingly and
intelligently waived it.[7]
 In sum, we hold that the procedure in section 2-118.1, allowing the
consideration of the officer's official reports, subject to the motorist's
right to subpoena the officer, comports with due process of law. However,
any waiver of the motorist's right to subpoena the officer must be knowing,
voluntary, and intentional. As there was no showing of such a waiver here,
the trial court erred in denying the petition based on the officer's
official reports, once the motorist presented a prima facie case for
recission.
 For all of the aforementioned reasons, the order of the circuit court
of Cook County is reversed and the case is remanded for further proceedings
consistent with this opinion.
 Reversed and remanded.
 REID, J., concurs.
 GREIMAN, J., specially concurs.
 JUSTICE REID, specially concurring:
 While I concur in the result of the majority opinion, I feel
compelled to write separately on the issue of trial by affidavit. I
believe the way the trial court conducted the hearing implicates section 2-
118.1 of the Illinois Vehicle Code in a way that is unconstitutional as
applied to this defendant and these peculiar facts and circumstances. (625
ILCS 5/2-118.1 (West 2000)). That statute reads, in relevant part, as
follows:
 "The hearing may be conducted upon a review of the law
 enforcement officer's own official reports; provided however,
 that the person may subpoena the officer. Failure of the
 officer to answer the subpoena shall be considered grounds for a
 continuance if in the court's discretion the continuance is
 appropriate." (625 ILCS 5/2-118.1(b) (West 2000)); Slip op. at
 5.
 The trial court reviewed the reports in this case because the
officers did not attend the continued hearing. These reports were
tantamount to an affidavit, and not a particularly compelling one at that,
because they contain essentially unsworn matter. This material comes into
evidence because of actions by the legislature and a quirk in the law which
opens the door to a form of trial by affidavit. I concur that "trial by
affidavit raises confrontation and cross-examination concerns, and has been
consistently condemned by Illinois courts in criminal, civil and
administrative review cases since the 19th century." Slip Op. at 10
(citations omitted). I also agree that "ex parte affidavits have long been
considered the weakest and most unsatisfactory evidence." Slip Op. at 10,
citing Franklin Union, No. 4 v. People, 220 Ill. 355, 390, 77 N.E. 176, 188-
89 (1906).
 The officers in question were available at the original hearing, but
that hearing was continued pursuant to a motion by the State. I agree that
the granting of the continuance "may have unintentionally lulled Ullrich
into believing he would be able to question the officer at the hearing."
Slip Op. at 19. I believe that, by moving the hearing date based on a
motion by the State from a point when the police were present to another
date that coincides with the police officer's key numbered court date, the
burden should shift to the State to make sure the police are present at the
continued hearing. If they are not, I do not believe the defendant should
be made to suffer, because his reliance was reasonable. It is that upon
which Ullrich, and other defendants similarly situated, should have the
right to rely. In light of the constitutional rights and compelling
interests at stake, the trial court should have treated this unique
situation as if Ullrich had subpoenaed the officer. To hold otherwise
would be not only to deny Ullrich procedural due process, but to open the
door to abuses by an unscrupulous prosecutor who could hide the police
officer in favor of the reports which cannot be cross examined. It simply
creates the opportunity for too much mischief. The statute is fatally
flawed because it gives a defendant no guaranteed right to confrontation,
but only the right to ask for a continuance at the court's discretion when
a police officer refuses to honor a subpoena. We don't have to reach that
issue in this peculiar case, however, because I believe the trial court was
wrong to have deemed the failure to issue a subpoena as a waiver of the
motorist's right to do so. We should not limit our inquiry to whether a
purported waiver after the presentation of a prima facie case for
rescission was knowingly, voluntarily and intentionally made. I would go
even farther. Under these facts and circumstances, I believe the right to
have the officer appear cannot be waived as a matter of law.
 JUSTICE GREIMAN, dissenting:
 After considering the tack the majority takes in arriving to its
conclusion and its ultimate holding, I must respectfully dissent. The
majority begins by outlining Ullrich's primary argument that the trial
court's consideration of unsworn police reports violated his right to due
process of law. It then carefully catalogues an assortment of civil,
criminal, and administrative cases that have denounced the practice of
"trial by affidavit" where a party's right to confrontation and cross-
examination is impaired. After that in-depth analysis, however, the
majority declines to answer Ullrich's argument because it finds that "the
essential disputed facts in this case are addressed in the sworn report"
and that "[t]he information in the unsworn reports was cumulative." Slip
op. at 13, n. 4.
 Despite this seeming conclusion, however, it then finds that Ullrich
properly preserved a due process argument by his objection "to admitting
various police reports, argu[ing] that considering some of the State's
hearsay evidence would violate his due process rights, and complain[ing]
about the absence of police officers." Slip op. at 14. In finding that
Ullrich presented an adequate case for a due process violation, the
majority leads the reader to believe that it would find the admittance of
both sworn and unsworn reports to be unconstitutional. Certainly, there
would be no need to note defendant's proper preservation of his due process
argument if the majority did not believe that the constitutionality
argument was, at least, well-founded. However, it asserts that it does not
so hold. Instead, it claims that Ullrich's right to subpoena protects his
due process concerns in that it provides him an adequate opportunity for
cross-examination and confrontation.
 In the end, the majority reverses the trial court for its error in
holding that Ullrich had waived his right to subpoena because there was no
evidence that his waiver was knowing, voluntary, and intentional. While I
agree that the right to subpoena protects the defendant's due process
concerns, I find sufficient evidence that his waiver was knowing,
voluntary, and intentional. He was represented by counsel and the right to
subpoena is expressly stated in section 2-118. In any event, I find that
the trial court's use and acceptance of the police officer's unsworn
reports comports with due process of law.
 The majority acknowledges that this court's decision in People v.
McIntire, 236 Ill. App. 3d 732 (1992), stands for the proposition that all
of an officer's reports may be considered without a foundation for
admission into evidence, and then ignores that decision. Slip op. at 9-10.
 In making special note that McIntire was a fourth district decision, it
calls into question whether it is still good law. I believe that it is,
and see little in the cases the majority cites that would cause me to
deviate from that belief. See also, People v. Gafford, 218 Ill. App. 3d
492 (1991); In re Suspension of Vaughn, 164 Ill. App. 3d 49 (1987).
 In admitting all of an officer's filed official reports, the
McIntire court compared its position to that prescribed by section 5-4-
1(a)(2) of the Unified Code of Corrections, which permits the admittance of
all presentence reports in criminal cases at sentencing. McIntire, 236
Ill. App. 3d at 737, citing 730 ILCS 5/5-4-1(a)(2) (West 2000), formerly
Ill. Rev. Stat.1991, ch. 38, par. 1005-4-1(a)(2); Slip op. at 9, n.2.
 Regardless of whether McIntire analogized section 2-118.1 proceedings
to what the majority might deem to be an improper context, the fact remains
that the reasoning employed by the McIntire court in admitting all of an
officer's official filed reports is undeniably linked to the essence of the
criminal statute. As McIntire explained, "the report is stated to be the
heart of the proceeding." McIntire, 236 Ill. App. 3d at 737. See also
People v. Williams, 149 Ill. 2d 467 (1992), which held that for sentencing
purposes, a presentence report is generally a reliable source for the
purpose of inquiring into defendant's criminal history. Here, too, the
reports are the heart of the proceedings.
 The main purpose behind a section 2-118.1 hearing is to determine
"whether the officer had reasonable grounds to believe that the person was
driving or in actual physical control of a motor vehicle upon a highway
while under the influence of alcohol, other drug, or combination of both"
through consideration of aggravating and mitigating factors that have no
bearing on the court's ultimate determination of guilt. As in sentencing
hearings, the best way to arrive at that determination is through a review
of official reports that reveal and recount those factors in aggravation
and mitigation.
 In this case, that would entail reports that relate the officer's
observations and how they related to his state of mind. The majority
chastises the trial court's admittance of the reports to show the officer's
state of mind because of a lack of a showing of the officer's
unavailability. Slip op. at 12, citing People v. Floyd, 103 Ill. 2d 541,
546 (1984). Under other circumstances, I would concur. However, as stated
by the trial court, the issue at a recission hearing is not whether the
petitioner was actually driving while drunk, but only whether the officer
had "reasonable grounds" for requesting him to take a breath test. A
determination of whether "reasonable grounds" exist in these situations
necessarily involves -and is inevitably attached to- an inquiry of the
state of mind of the officer. Indeed, "[t]o determine whether reasonable
grounds/probable cause existed, the trial court must determine whether a
reasonable and prudent person, having the knowledge possessed by the
officer at the time of the arrest, would believe the defendant committed
the offense." People v. Fortney, 297 Ill. App. 3d 79, 87 (1998). For in
these types of situations, the trial court has no evidence by which it can
make a determination of "reasonable grounds" other than the written
accounts of the situation, whether those accounts are sworn or unsworn.
Without question, the reports truly are at the heart of the proceedings.
 Accordingly, the unsworn reports and other hearsay go not to the
truth of the matter asserted, but assist only in advancing the purpose of
the hearing - the determination of the officer's state of mind (i.e.,
whether the officer has competently indicated the existence of "reasonable
grounds"). Such evidence is, therefore, admissible. And while I agree
with the majority that even sworn reports, which are akin to ex parte
affidavits, have been held to be "the weakest and most unsatisfactory
evidence" (slip op. at 10, citing Franklin Union, No. 4 v. People, 220 Ill.
355, 390 (1906), our job in the present case is not to determine the
relative weight of the evidence, but rather its admissibility. Certainly,
reports that carry strong indicia of reliability, such as the fact that
they were sworn to under penalty of perjury, should be afforded the most
weight. However, such notions are out of place in the present
circumstance.
 Of course, statutory interpretation is necessary only where the words
themselves are ambiguous. As this court stated in In re Estate of Ahmed,
322 Ill. App. 3d 741, 745 (2001):
 "It is axiomatic that in construing a statute, the first step is to
 determine and give effect to the intent of the legislature in passing
 the law by considering ' "the reason and necessity for the law, the
 evils it was intended to remedy, and its ultimate aims." ' Village of
 Mundelein[ v. Franco], 317 Ill. App. 3d [512, 517 (2000)], quoting
 People v. Pullen, 192 Ill. 2d 36, 42 1238 (2000). An analysis of
 statutory construction starts with the language of the statute itself,
 which this court should examine for its plain and ordinary meaning
 before other interpretive aids are consulted. R.W. Dunteman Co. v.
 C/G Enterprises, Inc., 181 Ill. 2d 153, 164 (1998). Where the
 language of a statute is ambiguous, a court may resort to other means
 of statutory interpretation, such as legislative history, in order to
 determine the legislature's intent. Armstrong v. Hedlund Corp., 316
 Ill. App. 3d 1097, 1106 (2000)."
 In the present case, the language of section 2-118.1(b) states that
an officer's "own official reports" are admissible at the hearings. It is
well established that official reports are "[a]ll records and reports
prepared by public officials pursuant to a duty imposed by law or required
by the nature of their offices" (Krause v. Pekin Life Insurance Co., 194
Ill. App. 3d 798, 804 (1990)), and that such reports "are admissible as
proof of facts stated therein so far as they are relevant and material to a
particular inquiry." Krause, 194 Ill. App. 3d at 804, citing Department of
Conservation v. First National Bank of Lake Forest, 36 Ill. App. 3d
495(1976). Such language is entirely unambiguous, as the legislature
necessarily would have included the requirement that the reports be "sworn"
in addition to being "official" if it so intended. Accordingly, not only
do I find the majority's exercise of statutory interpretation to be
unreflective of the law, but altogether unnecessary.
 It is difficult to understand the majority's reluctance to find
section 2-118.1 unconstitutional. After pages of lambasting the practice
of "trial by affidavit" and hovering around the issue of whether the
defendant received due process, the majority concludes that "Ullrich has
not clearly established that section 2-118.1 is unconstitutional" because
"the motorist's right to subpoena the officer affords an adequate
opportunity for cross-examination in the context of these proceedings."
(Emphasis in original.) Slip op. at 18. What, then, is the reader to take
from the majority's intense distaste for the singular reliance upon sworn
or unsworn reports in section 2-118.1 proceedings? And if the majority
believes, as it apparently does, that the admission of unsworn reports is
nefarious enough to constitute a potential due process violation, how can
it reconcile that belief with the reality that the admittance of sworn
reports presents the same confrontational and cross-examination problems as
sworn reports? The answers to these questions are unclear.
 Ultimately, however, the majority reverses, holding that there was no
evidence that Ullrich's waiver of his right to subpoena was knowing,
voluntary, and intentional. It finds that because the information
regarding license reinstatement, judicial review, and restricted permits
was missing from the reverse side of the court copy in the record on
appeal, there was no evidence to demonstrate that the motorist was informed
of his right to subpoena. However, records from the Illinois Secretary of
State's Office, which are public records that this court may take judicial
notice of (see Maldonado v. Creative Woodworking Concepts, Inc., 296 Ill.
App. 3d 935, 938 (1998)), indicate that "confirmations of suspension" sent
by the Secretary of State do, in fact, list all of that information on the
reverse side. Moreover, while it is true that the continuance of the case
"to a date keyed to the arresting officer's schedule *** may have
unintentionally lulled Ullrich into believing he would be able to question
the officer at the hearing" (slip op. at 19), the fact remains that Ullrich
himself never moved for a continuance from that later date to secure the
officer's presence. Because I believe that Ullrich was aware of his rights
and simply chose not to exercise them, he waived his right to subpoena.
 Accordingly, I respectfully dissent.
-----------------------

 [1] During oral argument, Ullrich's counsel asserted that the DUI
prosecution ultimately "failed." The recording of the oral argument is
unclear as to whether this assertion referred to a motion to suppress being
granted that impaired the case, whether petitioner was acquitted following
a trial on the merits, or both. Of course, the disposition of the criminal
case is separate from this case, and petitioner did not place evidence
regarding it into the record on appeal.

 [2] The State relies on People v. McIntire, 236 Ill. App. 3d 732,
736-37, 602 N.E.2d 938, 940-41 (1992), a Fourth District decision allowing
all of an officer's reports to be considered without a foundation for
admission into evidence. McIntire compares the officer's official reports
to presentence reports in criminal cases. McIntire, 236 Ill. App. 3d at
737, 602 N.E.2d at 941. Section 2-118.1 hearings are civil proceedings.
Moreover, in criminal cases: the rules of evidence are traditionally
relaxed after guilt has been ascertained at a trial; and post-sentencing
reports traditionally have been deemed reliable. People v. Williams, 149
Ill. 2d 467, 469-71, 599 N.E.2d 913, 923-24 (1992). The sworn report
functions like a pleading in a civil proceeding. See People v. McClain,
128 Ill. 2d 500, 507, 539 N.E.2d 1247, 1250 (1989). Such documents
generally may be filed with the trial court with a certification, but
without the necessity of a formal evidentiary foundation. However, this
analogy does not account for the admission of other reports without the
proper foundation.

 [3] The State argues that even if the reports were substantively
inadmissible, they could still be used for impeachment purposes. The State
cites 725 ILCS 5/115-5 (West 2000), a provision of the Illinois Code of
Criminal Procedure inapplicable to a civil hearing. The State also cites
People v. Strausberger, 151 Ill. App. 3d 832, 503 N.E.2d 832 (1987), a
criminal case admitting a police report as past recollection recorded,
which referred impeachment only in passing. Nor does the State explain how
the reports discredit Ullrich or Moreth, aside from the hearsay account of
the incident. Thus, the State's argument is waived, as the issue was not
adequately addressed. See People v. Rose, 268 Ill. App. 3d 174, 183, 643
N.E.2d 865, 871-72 (1994).

 [4] The Gafford court held that the issue of the admissibility of an
unsworn police report had been waived because it was not raised in the
trial court. Gafford, 218 Ill. App. 3d at 499, 578 N.E.2d at 588. The
Gafford court noted in dicta that it had been held that unsworn police
reports may properly be admitted. Gafford, 218 Ill. App. 3d at 499, 578
N.E.2d at 588, citing In re Summary Suspension of Driver's License of
Vaughn, 164 Ill. App. 3d 49, 52, 517 N.E.2d 699, 701 (1987). Vaughn was
decided before Orth; no due process issue was raised therein.
Nevertheless, the essential disputed facts in this case are addressed in
the sworn report. The information in the unsworn reports was cumulative.
Thus, we need not reach the issue of the admissibility of the unsworn
reports here.

 [5] Sarver held that where a defendant can participate in a pre-
deprivation hearing, there is no due process violation even where the sworn
report is inadequate. However, in Sarver, unlike this case, the arresting
officer testified. Sarver, 262 Ill. App. 3d at 514, 636 N.E.2d at 1032.
Thus, no issues of hearsay, confrontation or cross-examination were raised
in Sarver.

 [6] The importance of a knowing and intentional waiver is
underscored by the sui generis nature of the hearing. See People v.
Cooper, 174 Ill. App. 3d 500, 502, 528 N.E.2d 1011, 1012 (1988). Prior to
1994, section 2-118.1 provided that the trial court shall consider the
failure of the officer to answer a subpoena to be "the same as the failure
of a complaining witness to appear in any criminal proceeding," i.e., the
State would "nol pros" the case. See People v. Moony, 206 Ill. App. 3d
422, 425, 564 N.E.2d 192, 194 (1990). Although section 2-118.1 was later
amended to provide that a subpoenaed officer's failure to appear may be
grounds for a continuance, it must be noted that the burden of producing a
police officer is generally not placed upon the motorist in cases arising
under the Illinois Vehicle Code. The issue was not even settled until
Orth. The nature of the hearing thus increases the risk that a motorist
will be unaware of his rights.

 [7] We note on a practical level that the officer's sworn report in
this case bore only the last name of the officer and an "identifying
number." The last name does not appear to be a common one, and would not
necessarily be clear to the motorist. Indeed, the arrest report, which
requires that the arresting officer's name be printed, bears the name
"Loquercio," whereas the alcohol influence report has the printed name as
"Loquerco." An affidavit must be signed by the deponent or his name must
appear therein as the person who took the oath, in order to constitute a
formal affidavit. Northrop v. Lopatka, 242 Ill. App. 3d 1, 7, 610 N.E.2d
806, 811 (1993). This may not be a case where a doubt regarding identity
is fatal. See, e.g., People v. Brown, ___ Ill. App. 3d ___, 759 N.E.2d 582
(2001). However, such errors, if replicated in other identifiers, may pose
obstacles to subpoenaing an officer or raise questions regarding the
certification of the report.